## S93A1727. GADSON v. THE STATE.
(437 SE2d 313)

FLETCHER, Justice.

Bruce Gadson was convicted of felony murder, armed robbery and possession of a firearm during the commission of a felony for the robbery and shooting death of Christopher Marisco. He also entered a conditional guilty plea to the charge of possession of a firearm by a first offender act probationer. The armed robbery conviction merged with the felony murder conviction and Gadson was sentenced to life imprisonment for the felony murder, five years consecutive for the possession of a firearm during the commission of a felony charge and five years concurrent to the first five-year sentence for the possession by a first offender act probationer charge. He appeals and we affirm.[1]

1. The facts when viewed in the light most favorable to the prosecution are sufficient to prove that Gadson and Milas Black had been riding in a car together and talking about robbing the Subway Sandwich Shop in Garden City and that Gadson had given Black a chrome-plated .25 caliber handgun. Gadson and Black entered the Subway and ordered sandwiches. When Subway employee Marisco rang up the sale, Black displayed the handgun and demanded and received money from the cash drawer. After the employee gave Gadson the sandwiches which he had demanded, Black shot Marisco. The evidence further showed that Gadson and Black fled the shop together and that Gadson shared in the proceeds from the cash drawer. We conclude that a rational trier of fact could have found Gadson guilty of the crimes for which he was convicted beyond a reasonable

---

[1] The crimes occurred on December 15, 1991. Gadson was indicted on March 12, 1992, tried from July 27 to July 29, 1992 and sentenced on August 5, 1992. His motion for new trial was filed on August 26, 1992 and denied on April 15, 1993. A notice of appeal was filed on May 6, and the case was orally argued before the court on October 19, 1993.

doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The Subway where the shooting took place was equipped with a video camera which recorded the incident. The audio portion of the tape does not clearly pick up the voices of the people shown due to the volume of a radio playing in the shop. Investigators had the tape sent to the FBI lab in Virginia for "enhancement." The video and several "enhanced" copies were later returned to the officer investigating the incident. Gadson argues that it was error to admit the tape into evidence over his objection as the state did not introduce any testimony from the person or persons who handled the tape in Virginia nor any evidence that the law enforcement officers who did testify made any identifying marks on the tape to distinguish it as the original tape. Gadson asserts that this lack of evidence resulted in the state being unable to prove the chain-of-custody.

The state introduced the testimony of three law enforcement officers who had viewed the original tape both before and after it was sent to the FBI lab. All three officers testified that the tape introduced at trial was the same tape that they had viewed and that there had been no alteration in the tape from the time each had first viewed the original.

"Distinct physical object[s] that can be identified and differentiated by the senses of observation" are not "subject to the 'chain of custody' requirement." *Ramey v. State*, 238 Ga. 111, 113 (230 SE2d 891) (1976). See also *Cobb v. State*, 244 Ga. 344 (260 SE2d 60) (1979). The chain of custody requirement has been put in place to ensure the proper identification of items that have no unique observable characteristics that differentiate them from other like items. We have previously held that an audiotape is a "distinct and recognizable physical object" that can be "identified upon observation." *Crosby v. State*, 259 Ga. 822, 824 (389 SE2d 207) (1990). We have also held that properly authenticated photographs do not require proof of a chain of custody in order to be admitted into evidence. *Isaacs v. State*, 259 Ga. 717, 732 (386 SE2d 316) (1989). A videotape, like an audiotape or a photograph, is a distinct recognizable physical object that can be identified upon observation. The testimony of the three officers was sufficient to identify the tape. There was no error in the introduction of this evidence.

3. Gadson enumerates as error the trial court's decision to permit the introduction of evidence concerning a shooting incident at the Club Asia.[2] This evidence showed that 11 days before the Subway shooting Black and Gadson discussed robbing the Club Asia while

---

[2] Prior to the trial the court conducted a hearing pursuant to USCR 31.3 (B).

riding in a car together. They then went to the club and Black entered while Gadson waited outside. Black was thrown out of the bar by the manager. Angered by what had happened, Black testified that when he returned to where Gadson was waiting, he was followed by the manager. There was an exchange of words and then Black shot and killed the manager with a pistol given to him earlier by Gadson; the same pistol used in the Subway shooting.

The state claims that it introduced evidence of the Club Asia incident to rebut Gadson's testimony that he was shocked when Black pulled the gun at the Subway and to show Gadson's plan, scheme and bent of mind. In *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991) we held that in order for independent act evidence to be admissible it must be shown that the evidence is introduced for an appropriate purpose, that there is sufficient evidence to establish the accused's participation in the act and that there is a sufficient connection between the offenses such that proof of the independent act tends to prove the accused's participation in the crime for which he or she is on trial. Id. at 642.

The evidence concerning the Club Asia incident was introduced to rebut Gadson's claim that he was surprised by Black's actions and did not participate in the robbery, thus showing his "bent of mind." Additionally, the evidence tended to show a plan or scheme devised by Gadson and Black, as the details of the plan to rob Club Asia and the robbery of the Subway, as well as Black's and Gadson's actions during and after the incidents, shared many unique common elements. There was direct evidence of Gadson's participation in the first incident and the numerous similarities tend to disprove Gadson's claims about his intent and participation in the Subway robbery. We find that there is sufficient connection between the two incidents such that proof of the former tends to prove Gadson's participation in the latter. Because this evidence meets the standard set forth in *Williams v. State*, supra, the trial court properly admitted this independent act evidence.

4. We have reviewed the remaining enumerations of error and find that they are without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 2, 1993.

*Donald B. Lowe III,* for appellant.
*Spencer Lawton, Jr., District Attorney, Jon Hope, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff At-*

*torney,* for appellee.