A94A0828, A94A0911. HARPER v. THE STATE (two cases).
(445 SE2d 303)

BEASLEY, Presiding Judge.

Jerome Harper, appellant in Case No. A94A0911, was indicted for the armed robbery of Jimmy Chow by use of a knife on May 17, 1990 (Count 1). OCGA § 16-8-41. He was also indicted for the armed robbery of a Golden Pantry Food Store on July 21 (Count 2), and possession of a knife during the commission of that crime (Count 3). OCGA § 16-11-106.

He and his brother Jerald Harper, appellant in Case No. A94A0828, were jointly indicted for robbery by intimidation of Eat-A-Plenty Express (Count 4), OCGA § 16-8-40, and armed robbery of Wendy's Old Fashioned Hamburgers (Count 5), on July 24. Jerome and Jerald were each indicted for possession of a knife during the Wendy's robbery (Counts 6 and 7) and giving a false name to a law enforcement officer at the time of their arrest (Counts 8 and 9). OCGA § 16-10-25.

Jerome was convicted of all counts in which he was named, except Count 1 (armed robbery of Chow). Jerald was convicted of all counts charging him. In their appeals from the denial of their motions for new trial, Jerome has filed nine enumerations of error, and Jerald has filed two. Jerald's first enumeration is the same as Jerome's second.

The co-defendants are brothers who look alike. In the two years between the offenses and trial, their appearances were altered by weight gain and hair length change.

Brenda Barnes, an employee of the Golden Pantry on duty at the time of the robbery, testified that it was committed by two black males. She testified that one remained in the car and the other came into the store with a knife and forced her to give him the cash from the register. She identified the robber from a photographic line-up based on the appearance of a facial scar. On the first day of trial, she testified that she thought the robber was Jerald Harper but was not sure.

A surveillance camera at the Golden Pantry recorded the robbery on videotape. Barnes did not view the videotape until the second day of trial. She positively identified in it herself and her co-employee, Vera Bailey, who was also on duty at the time of the robbery. She testified with certainty that the robber was one of the co-defendants but could not be sure which one.

Bailey testified that she had viewed the videotape and the photo-

graphic line-up but was undecided as to which co-defendant was the robber because they both look similar. She testified that she believed Jerald was the robber, because the one who robbed her had the slimmer face.

The investigating officer took various photographs of Jerome Harper to depict his features, including a scar on his left cheek. The officer testified that after looking at the photographs and viewing the videotape, he concluded that Jerome was the robber. He testified that Barnes positively identified Jerome as the robber after being shown the photographic line-up and that Bailey said it could have been either of them.

An employee testified that the co-defendants entered the Eat-A-Plenty Express on July 24 at approximately 5:00 p.m. and robbed her with what felt in her back like a knife. She identified the co-defendants from photographs shown her by the police. She testified that Jerome held her arms while Jerald took the money.

The police officer investigating this robbery testified that he showed the employee two photographic line-ups, each containing the picture of only one brother. She picked out each brother's photo. The officer testified that he believed she identified Jerald as the one holding her arms.

An employee identified the co-defendants as the two perpetrators of the robbery of Wendy's at approximately 11:00 p.m. on July 24. He testified that Jerald entered the store first, followed by Jerome. A visitor who was present positively identified the co-defendants as the perpetrators but could not tell them apart. These two witnesses also positively identified the co-defendants from photographs shown them by police.

Shortly after the Wendy's robbery, the co-defendants were traced to a motel located on the same road. Jerome identified himself to police as Derrick Solomon, and Jerald identified himself as John Jessie Solomon. Jerome stated he had not robbed the Wendy's but had switched clothes with the "dude" who had.

1. Jerome contends that the court erred in denying his motion for new trial because the State failed to prove beyond a reasonable doubt his guilt in the Golden Pantry robbery with a knife (Counts 2 and 3).

In *Johnson v. State*, 176 Ga. App. 378, 380 (4) (336 SE2d 257) (1985), we declined to adopt the minority view that a witness' pretrial identification is inadmissible if the witness fails to positively identify the defendant at trial. Here, as in *Johnson*, the witness' original identification was made within days of the crime, when her memory was fresher than at trial; the defendant's appearance was substantially changed at trial; and the line-up photograph depicted defendant at the time the crime occurred. As held in *Johnson*, the inability of the witness to make a positive identification at trial affects the weight

of the evidence and the credibility of the witness, which are jury questions. The same is true of contradictions in the witness' identification of defendant shortly after the robbery and at trial. See *Gravitt v. State*, 220 Ga. 781, 787 (8) (141 SE2d 893) (1965); *Dimick v. State*, 178 Ga. App. 60, 62 (1) (341 SE2d 914) (1986); *Miller v. State*, 174 Ga. App. 703, 704 (2) (331 SE2d 616) (1985).

2. Both appellants contend that the court erred in denying their identical motions for "severance of offenses."

They moved before trial for severance of Counts 1 through 3, charging only Jerome, from the remaining counts. They also sought separate trials. The reasons given were that the evidence admissible on Counts 1 through 3 (Chow and Golden Pantry robberies) was not admissible on any other count and the effect of this evidence would be to prejudice Jerald unfairly.

When two or more defendants are charged with identical crimes, they may be jointly tried in the discretion of the trial court. *Johnson v. State*, 208 Ga. App. 747, 749 (2) (431 SE2d 737) (1993); *Ledbetter v. State*, 202 Ga. App. 524, 525 (2) (414 SE2d 737) (1992). Severance is not required simply because one co-defendant is charged with additional offenses not charged against the other. *Hightower v. State*, 263 Ga. 375, 376 (2) (434 SE2d 491) (1993). We find no abuse of discretion in the trial court's denial of the motion based on the showing made in its support. See generally *Ledbetter*, supra; *Hill v. State*, 193 Ga. App. 401, 403 (5a) (387 SE2d 910) (1989).

Jerome also moved to sever: (1) Count 1 (Chow) from Counts 2 and 3 (Golden Pantry), in that they were joined in the indictment solely because they were of the same or similar character; and (2) Count 4 (Eat-A-Plenty) from Count 5 (Wendy's), in that they were not so similar as to show a common scheme or plan or an identical modus operandi.

" 'Where criminal offenses are joined solely on the ground that they are of the same or similar character, the defendant has a right to have the offenses severed. (Cit.) However, where the offenses are so similar that they show a common scheme or plan or have an identical modus operandi, severance is discretionary with the trial court.' [Cit.] When offenses are based on the same conduct, on a series of acts connected together, or on a series of acts constituting parts of a single scheme or plan, severance becomes discretionary, not mandatory, [cit.], and the trial court may order severance if necessary to achieve a fair determination of the defendant's guilt or innocence on each count. [Cit.]" *Villarreal v. State*, 198 Ga. App. 501, 502 (402 SE2d 104) (1991).

In robbing Eat-A-Plenty Express and Wendy's within six hours of each other on the same day, the co-defendants were engaged in a continuing course of criminal conduct and a series of acts constituting

a common scheme or plan; the modus operandi was similar but not identical. A determination with respect to Counts 1 through 3 is moot because a directed verdict of acquittal was entered in favor of Jerome on Count 1 due to the State's failure to present evidence on it. It was not an abuse of discretion to deny his motion.

Both co-defendants argue on appeal that a joint trial hindered a fair determination of their respective guilt because of the similarity of their appearance and resultant confusion of identification evidence. They did not move for a severance on this ground either before or during trial. Compare *Terry v. State*, 190 Ga. App. 570 (1) (379 SE2d 604) (1989).

3. Jerome contends that the court erred in giving a cautionary instruction to the jury, after Barnes and Bailey testified, that Jerome was charged with the crimes alleged in Counts 2 and 3, that the State contended that he rather than the co-defendant committed these offenses, and that the jury should not infer anything hurtful to Jerald because of what had transpired thus far in the trial.

Both co-defendants objected to this instruction on the ground that it constituted an expression of opinion. The court then emphasized to the jury that it was not expressing an opinion but merely making a statement that the State's position was that Jerald alone committed these offenses. "A mere statement by the trial court as to what the adverse parties contend is not a statement of opinion by the court." *Owens v. State*, 81 Ga. App. 182 (hn. 2) (58 SE2d 550) (1950); compare *Crawford v. State*, 139 Ga. App. 347 (2) (228 SE2d 371) (1976).

On appeal, Jerome argues that the initial instruction in effect told the jury that the eyewitnesses had been mistaken in their identification of the co-defendant. This basis is waived because it was not raised at trial.

4. Jerome enumerates as error the admission in evidence of the videotape of the Golden Pantry robbery, for lack of a proper foundation in accordance with *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207 (88 SE2d 167) (1955). He contends it was not shown that the videotape recorder was functioning properly or that it was being operated by competent personnel. Compare *Bedley v. State*, 189 Ga. App. 90, 91 (3) (374 SE2d 841) (1988); *Allen v. State*, 146 Ga. App. 815, 817 (2) (247 SE2d 540) (1978).

The rule in other jurisdictions is that where a foundation is laid for the admission in evidence of a videotape through the testimony of a witness to the event who confirms that the videotape accurately and reliably represents what the witness sensed at the time in question, it is not necessary to show the proper functioning of the recording device or its operation by competent personnel. *Ex parte Fuller*, 620 S2d 675, 678 (Ala. 1993); *Mikus v. United States*, 433 F2d 719, 725-

726 (2d Cir. 1970); 1 McCormick on Evidence, § 214 (4th ed. 1992). This rule finds support in *Eiland v. State*, 130 Ga. App. 428, 429 (1) (203 SE2d 619) (1973), which held that the videotape of a scene may be admitted in evidence on the same basis as a still photograph, i.e., through a showing that it is a fair and accurate representation of the scene sought to be depicted.

Barnes testified that the videotape is a fair and accurate representation of the robbery. In accordance with the logic of *Eiland* and the foreign authorities cited, we hold that the court did not err in admitting the videotape.

5. In two enumerations, Jerome contends that the court erred in allowing the two investigators to testify that they had viewed the videotape of the Golden Pantry robbery and that in their opinion Jerome was depicted. Objections were made to their testimony as expressions of opinion.

Investigator Pinkston testified that he identified Jerome as the perpetrator after photographing him, viewing the videotape, and observing Jerome in person. He based his identification upon various of Jerome's features, the most distinctive being a shiny spot on the back of his head which glared in the video. The other officer, who arrested Jerome at the motel, likewise viewed him in person at close range at the time of the robberies.

Under Federal Rules of Evidence, it has been held that "[a] witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury. This criteri[on] is fulfilled where the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial. [Cits.]" *United States v. Farnsworth*, 729 F2d 1158, 1160 (1) (8th Cir. 1984); see *United States v. Stormer*, 938 F2d 759, 761 (1) (7th Cir. 1991); *United States v. Allen*, 787 F2d 933, 935 (1) (4th Cir. 1986). This holding finds support in *Garrett v. State*, 141 Ga. App. 584, 586 (3) (234 SE2d 161) (1977) and *Randall v. State*, 73 Ga. App. 354, 367 (3) (36 SE2d 450) (1945), which authorize the identification of a defendant through the opinion testimony of non-expert eyewitnesses, where the witnesses have testified to the facts upon which their opinions are based.

In this case, the investigators were not eyewitnesses to the robbery but, unlike the jury, they were able to observe the defendant at the time of the robbery before his appearance had changed. Thus, as in *Garrett* and *Randall*, their opinions are based upon their personal knowledge of the facts to which they testified. As in *Farnsworth* and the other federal cases cited, their opinions were probative of the fact in issue. It was not error to admit their testimony.

6. Jerome contends that, over his hearsay objections, the court erred in allowing Investigator Pinkston to testify that he showed certain photographs to various State's witnesses and that they all identified Jerome.

"A law enforcement officer is permitted to testify to a vocal fact of identification witnessed by himself without its being subject to a hearsay objection. [Cit.]" *Bruce v. State*, 142 Ga. App. 211, 213 (2) (235 SE2d 606) (1977).

7. Jerome contends that the court erred in denying his motion for mistrial because of Investigator Pinkston's testimony that the photos he showed to the State's witnesses were from an "arrested persons" photo book from the year 1989. The court instructed the jury to entirely disregard the testimony.

"The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with. [Cits.]

"When prejudicial matter is placed before the jury in a criminal case, the trial judge must decide whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the testimony from the consideration of the jury under proper instructions. [Cit.]" *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982). As in *Stanley*, so here, the trial judge acted immediately, ruled out the offensive testimony, and properly instructed the jury not to consider it. This did not amount to an abuse of discretion. See also *Howard v. State*, 204 Ga. App. 882, 884 (2) (420 SE2d 811) (1992); compare *Richardson v. State*, 199 Ga. App. 10, 11 (2) (403 SE2d 877) (1991).

8. Jerome contends that the court erred in playing the videotape repeatedly at slow motion and stop frame, at the request of the jury, after jury deliberations had begun.

For the reasons given in *Barnett v. State*, 204 Ga. App. 588, 589 (1) (420 SE2d 96) (1992) and *Brown v. State*, 201 Ga. App. 510, 511 (2) (411 SE2d 366) (1991), this was not an abuse of discretion.

9. Jerald contends that the court erred in denying the co-defendants' motion for a mistrial when the State announced before the jury that it would not introduce evidence as to Count 1 because of the illness of a key witness.

This enumeration is without merit. The announcement could have been harmful only to Jerome, since he alone was charged with that offense. Moreover, the jury was not present to hear the announcement. Later during the trial, the State did remark in the jury's presence that the subject witness was unable to testify because she was having gall bladder surgery, following which the court directed an

acquittal on Count 1. The co-defendants moved for a mistrial because of that remark, but the denial of that motion is not enumerated as error by either of them.

*Judgments affirmed. Andrews and Johnson, JJ., concur.*

DECIDED JUNE 3, 1994.

*Richard O. Ward,* for Jerald Harper.
*Sam B. Sibley, Jr.,* for Jerome Harper.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.