S95A0471. BENTON v. THE STATE.
(461 SE2d 202)

THOMPSON, Justice.

David Talton Benton appeals his convictions of kidnapping, aggravated assault, and incest, following the denial of his motion for new trial.[1] A mistrial was declared as to a charge of rape when the jury was unable to reach a unanimous verdict. Jurisdiction of this Court is invoked by constitutional challenges to a step-parent provision of the incest statute, OCGA § 16-6-22 (a) (1).

The evidence viewed in favor of the verdict showed that Benton entered the bedroom of his 16-year-old step-daughter during the early hours of the morning, unzipped her pants, and informed her that he wanted to have intercourse with her. When she resisted, he pointed a gun at her face, and forced her into a vacant apartment next-door where he removed her clothing and repeatedly had forcible intercourse with her. He threatened to kill her and her family if she disclosed these events to anyone. The evidence established that Benton was married to the victim's mother at the time of the crimes.

During the following weekend the victim told her father of the occurrence and of an incident which had happened a month earlier when she awoke to find her pants unzipped and Benton in her bedroom armed with a gun. On this occasion, he was interrupted by the arrival of another family member.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to enable a rational trier of fact to find Benton guilty beyond a reasonable doubt of the offenses for which he was convicted.

2. Benton asserts that OCGA § 16-6-22 (a) (1), which criminalizes sexual intercourse between a father and daughter or step-daughter, unconstitutionally infringes on the right of privacy because it bars intercourse with a non-blood-related, consenting adult.[2]

The statute was upheld against a challenge on privacy grounds in

---

[1] The crimes occurred on November 8, 1990 and Benton was indicted on February 8, 1991. Trial commenced on October 11, 1993, he was found guilty on October 15, 1993, and sentenced on January 14, 1994. A motion for new trial was filed on January 28, 1994, amended on October 25, 1994, and denied on October 27, 1994. Benton filed his notice of appeal on November 14, 1994. The case was docketed in this Court on January 15, 1995, and was orally argued on March 14, 1995.

[2] Likewise, OCGA § 16-6-22 (a) (2) prohibits sexual intercourse between a mother and son or step-son.

*Richardson v. State,* 256 Ga. 746 (2) (353 SE2d 342) (1987), where it was applied to step-parent incest with a child under the age of consent. The incest between father and step-daughter in *Richardson* began when the child was 12 years old and continued until the time of indictment, at which time the victim had attained the age of 17. "It was precisely because of Richardson's position of authority as the step-father of a child about twelve years old that he was able to begin the sexual exploitation and to continue it." Id. Any argument that this case differs from *Richardson* is misplaced. The prohibition against incest is rationally related to a legitimate governmental interest — the protection of children and of the family unit. OCGA § 16-6-22 is an effective means of accomplishing these objectives. As in *Richardson,* supra at 747, "[t]he assertion that consensual sexual activity is protected by a right of privacy is inapplicable here. . . ."

3. Because the class of individuals subject to punishment is not arbitrarily drawn, the statute does not violate the equal protection clauses of the United States and Georgia Constitutions.[3] Where no fundamental right or suspect class is involved, statutory classifications are permitted if reasonably related to the state's legitimate interest in protecting the public.[4] Thus, the statute stands if it is not arbitrary in light of the governmental interest. Classification on the basis of step-parent and step-child bears a rational relationship to the governmental interest in protecting children and family unity. This rationale applies for prohibiting sexual intercourse between a parent and step-child related by marriage, as for those persons related by blood.

4. Testimony concerning the incident which occurred one month earlier in the victim's bedroom was supported by evidence showing that the accused was the perpetrator; was offered to show defendant's state of mind; and was sufficiently similar to the present charge to satisfy the standards of *Maxwell v. State,* 262 Ga. 73 (414 SE2d 470) (1992), and *Williams v. State,* 261 Ga. 640 (409 SE2d 649) (1991).

5. As required by *Smith v. State,* 259 Ga. 135 (1) (377 SE2d 158) (1989), supra, the trial court conducted a hearing outside the presence of the jury to determine whether a reasonable probability of falsity exists as to the victim's prior accusations of sexual misconduct directed against persons other than the defendant. Because the trial court erroneously ruled the evidence inadmissible under the *Smith* standard, we reverse.[5]

---

[3] The guarantees of the equal protection clauses of the Georgia and United States Constitutions are coextensive. *Grissom v. Gleason,* 262 Ga. 374 (2) (418 SE2d 27) (1992).

[4] *Grissom,* supra at (3).

[5] The rape-shield law, OCGA § 24-2-3, does not necessarily prohibit such testimony. *Smith v. State,* supra.

The victim testified at the *Smith* hearing that on a prior occasion, the perpetrator (her former boyfriend) attempted against her will to pull her into a vacant apartment. She stated: "I told him I wasn't going. So I was led in anyway. So he tried to pull my clothes down, but I told him I didn't want to do it with him. So he just pulled them on down and he took me in the closet." Her uncle and her mother then arrived at the scene, and the perpetrator fled. The victim admittedly told her mother and police investigators that the perpetrator took her into the apartment against her will and that he tried to have sex with her. The victim's mother reported the incident to police based on her daughter's statements. The police incident report contains the victim's statement that the alleged perpetrator pulled her into the vacant apartment "and started sticking his hand in her pants and tried to pull her clothes off." The officer testified that the victim identified the perpetrator as her "attacker" from a photographic lineup. As a result, officers obtained a warrant for his arrest on kidnapping charges.

At a subsequent municipal court hearing, the victim recanted the allegations, admitting that she had voluntarily accompanied the perpetrator into the vacant apartment on the day in question, and that she had yielded to pressure by her mother to pursue the charges against him.

The offer of proof established a reasonable probability of falsity with respect to the victim's prior allegation of sexual misconduct against her former boyfriend. Since the threshold determination was satisfied under *Smith*, supra, it was error to withhold such evidence from the jury.

Benton's convictions were supported largely by the testimony of the victim. While clearly sufficient, we cannot say that the evidence of guilt was overwhelming, or that it is highly probable that the erroneous exclusion of the evidence did not contribute to the judgment. Accordingly, Benton must be afforded a new trial.

6. We do not address Benton's remaining enumerations of error as they are unlikely to reoccur on retrial.

*Judgment reversed. All the Justices concur, except Hines, J., not participating.*

SEARS, Justice, concurring.

I concur fully in the result reached by the majority. I write merely to address an erroneous assumption implicit in the appellant's contentions. The appellant argues that there can be no incest in this case because the sexual relationship was between the appellant and his step-daughter, who is not related to him by blood. This argument displays a lack of understanding of the crime of incest.

The incest taboo is one of the most important human cultural

developments. It is found in some form in all societies. This universal proscription restricts sexual intercourse, and hence marriage, among close relatives. Being primarily cultural in origin, the taboo is neither instinctual nor biological, and it has very little to do with actual blood ties. This is evident by the fact that the taboo is often violated — people generally are incapable of violating their instincts — and because society condemned incest long before people knew of its genetic effects. Modern anthropologists and comparative sociologists claim that the significance of the incest taboo is twofold. First, the restriction forces family members to go outside their families to find sexual partners. Requiring people to pursue relationships outside family boundaries helps to form important economic and political alliances, and makes a larger society possible. A second purpose of the taboo, as the majority aptly points out, is maintaining the stability of the family hierarchy by protecting young family members from exploitation by older family members in positions of authority, and by reducing competition and jealous friction among family members.

In applying the incest taboo, history has defined "close relative" in different ways. For example, medieval christian societies prohibited marriage between cousins, as well as between aunts and nephews, uncles and nieces, out to the seventh degree. In many of today's tribal societies, on the other hand, father-daughter and brother-sister intercourse may be condemned as incestuous while first cousins are considered preferred marriage partners.[6] Georgia's decision to include stepparents in its statutory proscription against incest is neither unreasonable nor out of keeping with the historical purpose and meaning of the taboo.

DECIDED JULY 28, 1995.

*Dwight L. Thomas, Charlotte Y. Kelly,* for appellant.
*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Frances E. Cullen, Assistant District Attorneys,* for appellee.

---

[6] See generally Posner, Richard A., Sex and Reason, Harvard University Press, Cambridge, Mass. 1992. See also Collins, Randall, Sociology of Marriage and the Family, Nelson-Hall, Chicago, Ill. 1985.