S97A0161. PHAGAN v. THE STATE.
(486 SE2d 876)

BENHAM, Chief Justice.

Delma Cecil Phagan was convicted of aggravated child molestation (OCGA § 16-6-4 (a)), sexual exploitation of a child (OCGA § 16-12-100 (b) (1)), and two counts of statutory rape (OCGA § 16-6-3 (a)).[1] On appeal, Phagan challenges the constitutionality of OCGA §§ 16-6-

---

[1] Appellant was sentenced to twenty years (fifteen to serve, five on probation) for each of the statutory rape convictions and the sexual exploitation conviction; and thirty years (fifteen to serve, fifteen on probation) for the aggravated child molestation.

3 (a) and 16-6-4, as amended in 1995, and questions the sufficiency of the evidence as well as several evidentiary rulings made by the trial court.

In January 1996, the grand jury returned a true bill on an indictment which charged appellant with two counts of statutory rape, i.e., engaging in sexual intercourse with a 15-year-old girl during the summer months of 1995. Effective July 1, 1995, it was illegal to have sex with a person under the age of 16 to whom the accused was not married. OCGA § 16-6-3 (a); Ga. L. 1995, p. 957. Prior to July 1, 1995, the conduct was illegal if one of the parties was under the age of fourteen. Ga. L. 1968, p. 715. The statute prohibiting aggravated child molestation, for which appellant was also indicted, was similarly amended, also effective July 1, 1995. OCGA § 16-6-4; Ga. L. 1995, p. 957, § 4. Since the 15-year-old minor in the case at bar turned 16 on September 29, 1995, the conduct with which appellant was charged was illegal behavior between July 1, the effective date of the statute, and September 28, 1995, the last day the minor was under 16.[2]

1. Appellant contends that the 1995 amendments to the statutory rape and child molestation statutes which expanded the coverage of the statutes to minors under the age of 16 are unconstitutional when applied to him since he had lawfully engaged in consensual sexual activity with the minor before the effective date of the amendments, and was thereby entitled, under the auspices of the constitutional right of privacy, to continue the activity. In effect, appellant contends his participation in the conduct before July 1 afforded him "grandfathered" protection against an accusation of illegal conduct occurring after July 1. Under appellant's theory, a legislative proscription of certain conduct is not applicable to those persons who had previously engaged in the proscribed conduct prior to it being declared illegal.

While we would agree that the 1995 amendments could not be applied constitutionally to prosecute appellant for his pre-July 1 sexual relationship with the minor, the indictment makes it explicitly clear that appellant was prosecuted for his post-July 1 conduct. We cannot agree with appellant's suggestion that his right of privacy exempts him from the amendments' coverage. Whatever privacy interest appellant invokes to protect, his consensual sexual activity with a 15-year-old female not his spouse does not offer a safe haven from the criminalization of the conduct. Within the General Assembly's constitutional empowerment to make all laws it deems necessary and proper for the welfare of the State so long as the law is con-

---

[2] The counts of the indictment recognized the "window of illegality" by alleging that the acts which comprised the statutory rape and aggravated child molestation charges occurred between July 2 and September 28.

stitutional (1983 Ga. Const., Art. III, Sec. VI, Par. I), rests the power to change or modify existing laws. *State Bd. of Ed. v. County Bd. of Ed. of Richmond County*, 190 Ga. 588 (1) (10 SE2d 369) (1940). The right to privacy is a fundamental right, and a government-imposed limitation on that right must undergo strict judicial scrutiny to determine whether the impingement serves a compelling state interest. *Ambles v. State*, 259 Ga. 406 (2) (b) (383 SE2d 555) (1989). See also *Zane v. Previewed*, 248 Ga. 832, 833-834 (286 SE2d 715) (1982).[3]

The State has a "compelling governmental interest [in] the welfare of the children." *In the Interest of J. C.*, 242 Ga. 737, 738 (251 SE2d 299) (1978). Its interest in " 'safeguarding the physical and psychological well-being of a minor' is 'compelling' " and 'beyond the need for elaboration.' [Cit.]" *Aman v. State*, 261 Ga. 669 (1) (b) (409 SE2d 645) (1991). See also *In the Interest of B. L. S.*, 264 Ga. 643, 649 (449 SE2d 823) (1994) (Sears, J., concurring in part and dissenting in part); *Barnes v. State*, 244 Ga. 302 (260 SE2d 40) (1979). See also *Benton v. State*, 265 Ga. 648 (2) (461 SE2d 202) (1995). The 1995 amendments raised the age which a minor must reach before being legally capable of consenting to sexual intercourse, and extended the statutory protection afforded children against exposure to immoral or indecent acts intended to arouse or satisfy sexual desires. In raising the age at which a minor may consent to sexual intercourse and under which a minor may not be subjected to immoral or indecent acts, the General Assembly acted to further the State's compelling interests in safeguarding young people. In light of the State's compelling interests in the welfare of its young citizens, the trial court properly upheld the age amendments against appellant's constitutional challenge.

2. Appellant also took aim at the constitutionality at OCGA § 16-6-3 (b), which provides harsher punishment for older persons found guilty of statutory rape.[4] Since appellant contends the statute unconstitutionally discriminates against a class of persons, an equal protection analysis is warranted. However, "[w]here a criminal statute does not discriminate on racial grounds or against a suspect class, equal protection and due process concerns are satisfied if the statute

---

[3] But see *Christensen v. State*, 266 Ga. 474 (2) (a) (468 SE2d 188) (1996), where a plurality of this Court measured the State's limitation of the claimed right of privacy using the "legitimate state interest" analysis.

[4] At the time of the crimes, OCGA § 16-6-3 (b) required a one to twenty-year sentence for statutory rape unless the victim was fourteen or fifteen and the defendant was within three years of the victim's age. Under those circumstances, the trial court was authorized to impose misdemeanor punishment. Ga. L. 1995, p. 957. By the time appellant was sentenced (August 1996), the General Assembly had amended § 16-6-3 (b) to provide a mandatory ten to twenty-year sentence for perpetrators over age twenty-one, and misdemeanor punishment if the victim was fourteen or fifteen and the perpetrator was no more than three years older than the victim. Ga. L. 1996, p. 871, § 1.

bears a 'reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.' [Cit.]" *Fleming v. Zant*, 259 Ga. 687, 688 (386 SE2d 339) (1989). Appellant's age (46) does not make him representative of a suspect class based on age. See *Mass. Bd. of Retirement v. Murgia*, 427 U. S. 307, 313 (96 SC 2562, 49 LE2d 520) (1976) (officers over age 50 did not constitute a suspect class for purposes of equal protection). Since the statute does not disadvantage a suspect class or interfere with the exercise of a fundamental right, it need only bear a reasonable relationship to a legitimate state purpose. *Benton v. State*, supra, 265 Ga. at 649; *Ambles v. State*, supra. See also *Fulton County School Dist. v. Sanders*, 242 Ga. 298 (2) (248 SE2d 670) (1978), where this Court applied a "rational basis for review" standard to a statutory scheme calling for mandatory retirement at a certain age.

In examining a statutory sentencing scheme that provided varied punishment based on the perpetrator's age, the Supreme Court of Nevada held that the punishment differential was not violative of the Equal Protection Clause because "the legislature could reasonably decide that [persons] beyond a certain age should have sufficient maturity and judgment to be held responsible for conduct which might be excusable in a younger person." See also *State v. Drake*, 219 NW2d 492, 496 (Iowa 1974), where the Supreme Court of Iowa upheld its statute against constitutional challenge. We find the rationale of these two courts persuasive and conclude that the General Assembly had a rational basis for enacting the amendment calling for disparate sentences based on the age of the perpetrator. Accordingly, the trial court did not err when it upheld the constitutionality of OCGA § 16-6-3 (b).

3. We turn next to appellant's assertions that the evidence presented at trial was not sufficient to authorize a rational trier of fact to find appellant guilty of the charges beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). With regard to the two statutory rape convictions, there is no doubt that appellant and the minor engaged in sexual intercourse. However, in order to convict appellant of the charges, the State had to prove that the acts took place between July 1 and September 28, 1995. We examine the sufficiency of the evidence presented against appellant with that time frame in mind.

(a) The minor testified that she had sexual intercourse with appellant between five and ten times. At no time during her testimony was she able to provide a date on which she and the appellant engaged in sexual conduct. On direct examination, she testified that she had met appellant in June or July 1995, after school had recessed for the summer months, and that she had had sexual intercourse

with him that evening,[5] as well as two to four weeks later. She stated that the night before she underwent a physical examination at Northeast Georgia Medical Center at her mother's insistence, she and appellant had had sex. She testified that the sexual conduct was repeated two or three times between the hospital visit and her sixteenth birthday. Hospital records admitted into evidence reflect that the victim was seen on July 15, 1995, "per parental request."

On cross-examination, the minor said her first two sexual encounters with appellant took place before July 1, 1995, and she was unable to tell the jury whether she had been with appellant after July 1. She identified a greeting card found in appellant's home as one she had written on June 14, 1995, after several sexual encounters with appellant, and which she had delivered to him "one week or so later," soon after which they saw each other for the last time. Despite the minor's contradictory testimony concerning the timing of her encounters with appellant, her testimony that she had intercourse with appellant on July 14 and two or three times thereafter while she was fifteen was sufficient evidence from which the jury could determine beyond a reasonable doubt that appellant engaged in sexual intercourse with the minor at least twice during the proscribed period.

(b) Appellant was also charged with having committed an act of aggravated child molestation against the minor during this time period. As with the statutory rape charges just discussed, the act alleged (placing his penis on and into the mouth of the minor) was an act of aggravated child molestation, insofar as this minor is concerned, only between July 1 and September 28, 1995. While the minor responded affirmatively on direct examination when asked if "oral sex" had been performed the evening before her July 15 hospital visit, as soon as she was told what was meant by the term "oral sex," she denied that the act had occurred. Despite the minor's testimony that an act of oral sodomy had not occurred, a videotape found in appellant's closet and played for the jury depicts an act as alleged in the indictment. When played, the videotape displays a taping date of July 15, 1995, placing the act within the time frame during which the conduct was illegal. However, the minor could not verify the accuracy of the date and a State's witness acknowledged that the taping date could be changed at will by the videotaper. Furthermore, this videotape, as well as another purportedly depicting appellant and the minor engaged in sexually explicit conduct, were played before the jury without the authentication necessary for their admission. See

---

[5] The jury was instructed that the minor's testimony concerning her initial sexual encounter with appellant was admitted only for the limited purpose of showing identity, bent of mind, and lustful disposition.

Division 5, infra. However, when determining whether the evidence presented was sufficient to authorize a jury to conclude beyond a reasonable doubt that the defendant was guilty of the crime charged, evidence wrongfully admitted due to lack of authentication may be considered. See *Hall v. State*, 244 Ga. 86 (5) (259 SE2d 41) (1979). Compare *Livingston v. State*, 268 Ga. 205 (1) (486 SE2d 845) (1997). Inasmuch as the videotape may be considered when examining the sufficiency of the evidence and it provided sufficient evidence for the jury to determine beyond a reasonable doubt that the alleged act of aggravated child molestation had occurred during the proscribed period, the evidence was sufficient to authorize appellant's conviction.

(c) The State also charged appellant with sexual exploitation of a child. OCGA § 16-12-100 (b) (1). That statute makes it unlawful "for any person knowingly to employ, use, persuade, induce, entice, or coerce any minor to engage in or assist any other person to engage in any sexually explicit conduct for the purpose of producing any visual medium depicting such conduct." "Minor" is statutorily defined as "any person under the age of 18 years" (OCGA § 16-12-100 (a) (1)), and " 'sexually explicit conduct' means actual or simulated: . . . [s]exual intercourse. . . ." OCGA § 16-12-100 (a) (4) (A). It is undisputed that each of the videotapes admitted into evidence depict sexually explicit conduct. Appellant contends that the evidence presented by the State was insufficient to authorize the guilty verdicts because the State failed to prove that appellant knew the minor was under the age of 18. Accordingly, we must determine whether OCGA § 16-12-100 (b) (1) requires the State to prove that the accused knew the minor involved was under 18 and, if so, whether the jury was presented with sufficient evidence from which it could conclude that appellant knew the minor was under 18.

During its review of a New York statute which prohibited the promotion of a sexual performance by a child, the United States Supreme Court noted that "criminal responsibility [for child pornography] may not be imposed without some element of scienter on the part of the defendant." *New York v. Ferber*, 458 U. S. 747, 765 (102 SC 3348, 73 LE2d 1113) (1982). See also *Osborne v. Ohio*, 495 U. S. 103, 115 (110 SC 1691, 109 LE2d 98) (1990), where the Supreme Court ruled the *Ferber* requirement that prohibitions on child pornography include some element of scienter was met despite the absence from the Ohio statute of a mens rea requirement. In *United States v. X-Citement Video*, 513 U. S. 64 (115 SC 464, 472, 130 LE2d 372) (1994), the Supreme Court closed its analysis of a federal statute prohibiting the transportation, distribution, and receipt of child pornography by suggesting that "serious constitutional doubts" would be raised by a statute "completely bereft of a scienter requirement as to the age of

the performers" depicted in the child pornography.

OCGA § 16-12-100 (b) (1) clearly contains a scienter requirement: the accused must *knowingly* use or induce a minor to engage in sexually explicit conduct in order that a visual medium depicting the conduct may be produced. Compare OCGA § 16-6-3, in which the defendant's knowledge of the age of the victim is not an essential element of the crime of statutory rape. *Tant v. State*, 158 Ga. App. 624 (2) (281 SE2d 357) (1981). "[W]here knowledge is made a part of the offense, so that the scienter must be proved by the State, . . . the burden is on the State to prove the guilty knowledge." *Robinson v. State*, 6 Ga. App. 696, 703 (65 SE 792) (1909).[6]

The evidence relied upon by the State to establish that appellant knew the minor was under 18 was as follows: the minor did not drive a motor vehicle in appellant's presence; the girlish handwriting and phraseology displayed on the greeting card the minor acknowledged sending to appellant during their relationship; the appearance of the minor in the videotapes purportedly recorded during this time;[7] and her appearance and demeanor while testifying at appellant's trial. From these facts, all of which were established as known by appellant, the jury was authorized to conclude beyond a reasonable doubt that appellant knew the minor was under 18. Consequently, there was sufficient evidence to find beyond a reasonable doubt that appellant was guilty of the crime charged.

4. Appellant next contends that the trial court erred when it per-

---

[6] Other states' legislatures incorporate expressly within their statute affirmative defenses concerning the defendant's knowledge of the age of the minor, or state expressly that a defendant's ignorance of the minor's age is no defense. See, e.g., C.R.S § 18-3-406 (Colo.) (if minor is at least 15, it is an affirmative defense that defendant reasonably believed the minor to be 18); the good faith reasonable belief defense: R.C.W. § 968A.110 (Wash.) (it is a defense that defendant was led to believe that the minor was over 18); § 720 I.L.C.S. (Ill.) ; N.Y. Penal Law, § 263.20; N.D. 12.1-27.2-05; lack of knowledge of minor's age an affirmative defense (Oregon § 163.690). Sexual exploitation of a minor is a strict liability offense, with a defendant's mistake as to the minor's age being no defense in several states. See, e.g., § 617.246 (Minn.); § 827.071 (Fla.); R.S. 14:81.1 (d) (La.); § 2907.322 (B) (2) (Ohio); 18 § 6312 (e) (Pa.). But see § 16-15-385 (S.C.) (mistake of age is a defense if the defendant requested and received official government-issued identification indicating the presenter was over 18 and defendant reasonably so believed). The New Jersey law (2C: 24-4 (a) (6)) creates a rebuttable presumption that one who is depicted as or presents the appearance of being underage is underage, while North Carolina (§ 14-190.16 (b)) authorizes the trier of fact to infer that a person in material that represents or depicts a minor is a minor, and states that mistake of age is not a defense. In interpreting its statute (I.C.A. § 728.2) which is very similar to OCGA § 16-12-100 (b) (1), the Iowa Supreme Court determined that the defendant's knowledge of the minor's age was not an element of the crime. *State v. Gilmour*, 522 NW2d 595 (Iowa 1994).

[7] While the admission of the videotapes was error due to lack of authentication (see Division 5, infra), the erroneously-admitted evidence may nonetheless be considered when addressing whether the State presented sufficient evidence for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Livingston v. State*, supra; *Hall v. State*, supra, 244 Ga 86 (5). See also Division 3 (b), supra.

mitted evidence of appellant's consensual sexual relationship with the minor before July 1, 1995, to be used as similar transaction evidence to establish appellant's intent, bent of mind, and lustful disposition. See OCGA § 24-9-20 (b). Contrary to appellant's contention, similar transaction evidence is not limited to a defendant's previous illegal conduct. See, e.g., *Caldwell v. State*, 263 Ga. 560 (13) (436 SE2d 488) (1993), where evidence of a defendant's legal possession of adult movies was deemed admissible to show his bent of mind and lustful disposition toward the sexual activity with which he was charged. In *Holman v. State*, 202 Ga. App. 57 (2) (413 SE2d 234) (1991), oral testimony concerning the defendant's possession of adult movies was admissible to prove his bent of mind or disposition toward the conduct with which he was charged. The trial court did not err in admitting the evidence.

5. Law enforcement officers executed a search warrant at appellant's home and found two videotapes in a manila envelope in a safe in a home office closet. The tapes were admitted into evidence and played for the jury over appellant's objection that they were not properly authenticated.[8] One of the two videotapes so admitted was critical to the State's case concerning the charge of aggravated child molestation since that video contained the only evidence the State presented on the charge in light of the minor's denial that an act of oral sodomy had occurred. See Division 3 (b), supra. Appellant asserts the trial court's admission of the videotapes was error because the proper foundation was not laid.

The videotape seems to be "the common mechanism for presenting representations of motion to the trier of fact." 2 McCormick on Evidence, Ch. 21, p. 18, § 214 (4th ed.). It was preceded in this role by the still photograph and motion picture film. Whether the medium is photo, film, or video, however, its evidentiary value is that it is "a graphic portrayal of oral testimony, and [it] becomes admissible only when a witness has testified that it is a correct and accurate representation of relevant facts personally observed by the witness." Id. at p. 13. This Court enunciated that standard in 1958, when it upheld a trial court's admission in a contempt action of a motion picture film which depicted the defendants engaged in contumacious conduct, after noting the testimony of a witness concerning the accuracy of the film: the operator of the camera which produced the film had testified

---

[8] In response to appellant's authentication objection, the trial court instructed the assistant district attorney to establish a chain of custody. The ADA accomplished this task by having every officer who had had custody of the tapes from the moment they were removed from the safe in appellant's home until trial testify that he/she had not tampered with or altered the tapes. However, videotapes are not subject to the chain of custody requirement since they are distinct physical objects that can be identified and differentiated by observation. *Gadson v. State*, 263 Ga. 626 (2) (437 SE2d 313) (1993).

that he personally had seen the events and that the film "correctly portray[ed] what he saw take place at the time the events occurred. . . ." *Long v. General Electric Co.*, 213 Ga. 809 (3) (102 SE2d 9) (1958). Twenty years later, the Court of Appeals imposed greater evidentiary prerequisites to the admission into evidence of a videotape by requiring that the seven requirements for admission of an audiotape set forth in *Solomon, Inc. v. Edgar*, 92 Ga. App. 207 (88 SE2d 167) (1955) be met. *Allen v. State*, 146 Ga. App. 815 (2) (247 SE2d 540) (1978). Since that time, however, the appellate court has implicitly recognized that videotapes do not fit the *Solomon* mold as easily as audiotapes, and has whittled away at the *Solomon* requirements where the admission of a videotape is at issue. See, e.g., *Harper v. State*, 213 Ga. App. 444 (4) (445 SE2d 303) (1994), where it was held that a videotape of a convenience store armed robbery was properly admitted into evidence when the victim/eyewitness of the armed robbery testified that the video was a fair and accurate representation of the robbery, even though it had not been shown that the video recorder was functioning properly or was operated by competent personnel; *State v. Berky*, 214 Ga. App. 174 (447 SE2d 147) (1994), vacated on other grounds, 266 Ga. 28 (463 SE2d 891) (1995), where the court acknowledged that the *Solomon* foundational criteria could not be met due to the death of the arresting/taping officer, and adopted the "silent witness theory" of authentication which instead required: (1) expert testimony establishing that the videotape had not been altered or manipulated; (2) testimony establishing the date and place the videotape was taken; and (3) testimony establishing the identity of the relevant participants depicted; *Freeman v. State*, 216 Ga. App. 319 (1) (454 SE2d 196) (1995), where two of three judges endorsed expansion of the "silent witness theory" to a situation where the maker of the videotape was available to testify.

In 1996, just weeks after this Court vacated the opinion in *Berky* which had adopted the "silent witness theory," the difficulty inherent in authenticating a photo, motion picture, videotape or audiotape when an authenticating witness was unavailable was again brought to the attention of the General Assembly. Melissa Williams, Evidence, 13 G.S.U. L. Rev. 168, 169 (1996). A "Silent Witness" bill was introduced and, after much discussion and study by the legislature, was passed by both houses "to provide for the admissibility of photographs, motion pictures, videotapes, and audio recordings as evidence. . . ." Ga. L. 1996, p. 443. The result of the legislative process is OCGA § 24-4-48, in which the legislature set statutory criteria for authentication of photo, motion picture, videotape, or audiotape evidence when an authenticating witness was "unavailable." See OCGA § 24-4-48. The method adopted by the General Assembly for providing authentication for such evidence in order that it might gain

admission at trial parallels the means by which hearsay is admitted when the declarant is "unavailable:" after a judicial determination is made that the necessary witness is "unavailable," the proponent of the evidence presents competent evidence to the court in an effort to show that the proposed evidence reliably shows the facts for which it is offered. Upon the trial court's determination that the proffered evidence is reliable, it is admissible without the testimony of the necessary witness. Compare OCGA § 24-4-48 (b) and (c) with *Higgs v. State*, 256 Ga. 606 (3-5) (351 SE2d 448) (1987) and its progeny. By enactment of OCGA § 24-4-48, the legislature provided the means to bridge the evidentiary chasm created by an unavailable authenticating witness and, in doing so implicitly rejected the "silent witness" theory suggested by the Court of Appeals in *State v. Berky*, supra, 214 Ga. App. at 176, which offered markedly different foundational requirements for the admissibility of evidence in the absence of an authenticating witness.

However, while OCGA § 24-4-48 was in effect when appellant was tried, it could not be the vehicle by which the videotapes were admitted into evidence because the essential criterium, the unavailability of an authenticating witness, could not be met. Under OCGA § 24-4-48 (a) (1), appellant was unavailable to authenticate the videotapes. The minor, however, met none of the statutory criteria of unavailability. See OCGA § 24-4-48 (a) (1-5). Therefore, the statutory procedure for authentication could not be used and, in point of fact, it was not used. In those circumstances not covered by the new legislation, adherence to a modified version of the original rule set forth in *Long v. General Electric Co*, supra, 213 Ga. 809, is appropriate: a videotape is admissible where the operator of the machine which produced it, or one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred.

Applying the appropriate standard to the facts of the case at bar, we are constrained to conclude that the videotapes played for the jury were not authenticated. The officer who found the tapes and viewed them testified that one accurately portrayed appellant's bedroom and the other his living room and identified appellant as one of the persons depicted on the tapes. However, the officer never stated that the tapes accurately depicted events he witnessed. The minor testified that, at the request of the district attorney, she had viewed "some videotapes"; that one, of which she had seen "only a minute of it, maybe two," had depicted appellant "and some woman . . . and then it was me." She stated she had seen a minute of a video of her and appellant in his bedroom, and "a little bit" of a tape of her and appellant in his living room, but that she had never seen a videotape of her having sex with appellant. It was never ascertained that the

videotapes admitted into evidence, which depicted a male and female engaged in sexual intercourse and other sexually explicit conduct, were the videos of which the minor had viewed snippets, and the minor never testified that the videotapes admitted into evidence accurately portrayed events which she had witnessed. As a result, the jury watched two videotapes which appeared to depict appellant and the minor[9] without anyone testifying that what the jury was seeing was an accurate portrayal of what actually occurred. In light of this evidentiary deficiency, we must reverse appellant's conviction for aggravated child molestation because the erroneously admitted videotape contained the only evidence supporting the charge. Likewise, we are constrained to reverse the conviction for sexual exploitation of a child because we cannot say it is highly probable that the erroneous admission of the videotapes did not infect the jury's determination that appellant knew the minor was under the age of 18. See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

6. Sexual paraphernalia found in the search of appellant's home was admissible to show lustful disposition despite not having been recognized by the minor as a device used by appellant with her. *Holman v. State*, supra, 202 Ga. App. 57.

7. Prior to trial, the State announced its intent to prove, as a similar transaction, an incident that occurred between appellant and the minor in August 1995. The trial court later ruled that the State had not established satisfactorily the existence of that incident. No mistrial was necessary since any evidence of sexual intercourse between appellant and the minor in August 1995 would have been evidence of the crime charged.

8. Any error in the trial court's failure to instruct the jury on the law of similar transaction evidence and its limited use prior to the introduction of such evidence (but see footnote 3, supra) was harmless in that the vagueness of the minor's testimony concerning the dates of her encounters with appellant made it virtually impossible to determine what evidence, if any, was admitted as a similar transaction.

9. Citing *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978), appellant contends that the applicant for the search warrant which, when executed, unearthed the videotapes and sexual paraphernalia, made false statements knowingly and intentionally or with reckless disregard for the truth. After conducting a hearing

---

[9] We assume that the persons depicted in the videotapes submitted with the appellate record are appellant and the minor. Since no member of this Court was present at appellant's trial and no photographs of those who participated in the trial are contained in the record before us, we cannot compare the video likenesses to the visages of appellant and the minor.

on appellant's contentions, the trial court determined that the affidavit's terms attacked by appellant were not deliberate falsehoods or statements made in reckless disregard for the truth. The trial court did excise two phrases from the affidavit ("child sexual abuse" and "abuse") and thereafter re-examined the affidavit, finding under the totality of the circumstances test set forth in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983) that sufficient probable cause remained for the issuance of the warrant. Accordingly, there was no error in the denial of appellant's motion to suppress.

10. The minor's testimonial reference to having seen a minute or two of a video which initially depicted appellant and another woman before it showed the minor did not, contrary to appellant's assertion, place appellant's character in issue as there was no testimony from which it could be inferred that appellant and the other woman were guilty of prior crime, had criminal records, or were engaged in bad acts. *Hilton v. State*, 233 Ga. 11 (1) (209 SE2d 606) (1974).

11. OCGA § 17-16-7 was not violated when the statement at issue was oral and was neither recorded nor committed to writing other than in notes or summaries prepared by counsel. *Forehand v. State*, 267 Ga. 254 (3) (477 SE2d 560) (1996).

In summary, we affirm appellant's conviction for statutory rape. However, the erroneous admission of the videotapes into evidence without the necessary authentication requires us to reverse the aggravated child molestation conviction because the tapes contained the only evidence of the crime, and to reverse the sexual exploitation of a child conviction because we cannot say that the admission of the tapes was harmless error with regard to that offense.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein, J., who dissents as to Division 5.*

SEARS, Justice, concurring.

I fully concur with the majority's partial affirmance and partial reversal of the convictions in this case. I write separately, however, to encourage the legislature to remove the scienter requirement from OCGA § 16-12-100 (b) (1) altogether. As is the case with statutory rape, I believe that one should be held strictly liable for sexually exploiting a minor by depicting the minor engaging in sexually explicit conduct. Put another way, I believe that before loading film in the camera, one who would photograph or videotape another individual having sexual relations must be certain beyond any and all doubt that the individual being depicted is an adult. Barring such certainty, one should either refrain from taking the photographs, or else be prepared to pay dire consequences. While I do not question the constitutional associative and expressive rights of consenting adults, when the safety and well-being of children is at stake, as was

the case here, I cannot fathom how we can demand anything other than strict accountability on the part of the exploiting adult.

I also note that this case illustrates a hard and humbling lesson — that there are intrinsic limits on the law's ability to impart virtue, and to form and forge character. In our society today, too much time and energy is being spent indulging obsessive self-preoccupations, to the exclusion of, interest and involvement in, or concern about other people. Not enough time or effort is being devoted to the cultivation of our people as moral human beings. (This is especially true with regard to our young people, who are our future.) As a society, we must stop tolerating the type of malignant self-gratification that Phagan displayed in this case, and demand in its place responsibility, civility, and integrity.

CARLEY, Justice, concurring.

I concur in Division 1 of the majority opinion to the extent that it concludes that there is no unconstitutional abridgement of appellant's right of privacy as a result of the state's proscription of certain private sexual conduct. As the United States Supreme Court has held, the right of privacy does not insulate "any kind of private sexual conduct between consenting adults . . . from state proscription . . . ." *Bowers v. Hardwick*, 478 U. S. 186, 191 (106 SC 2841, 92 LE2d 140) (1986). Neither is there any violation of a state constitutional right because "[o]ur constitution does not deny the legislative branch the right to prohibit such conduct." *Christensen v. State*, 266 Ga. 474, 476 (2) (a) (468 SE2d 188) (1996).

HUNSTEIN, Justice, dissenting.

I respectfully dissent to the majority's holding in Division 5 that the admission of the two videotapes, State's Exhibits 1 and 2, was error. I thus dissent to the reversal of appellant's convictions for aggravated child molestation and sexual exploitation of a child.

At issue are State's Exhibits 1 and 2, which both depict the same middle-aged man and adolescent female engaging in various sex acts at two separate times in two different rooms in appellant's house (bedroom in Exhibit 1 and living room in Exhibit 2). The two people are readily identifiable throughout both tapes. Testimony established that the man was appellant; the victim testified that she was the female depicted with appellant on the videotapes shown to her by the district attorney.[10] The victim did not testify that the tapes accurately

---

[10] I find that the trial court was authorized to conclude that the videotapes viewed by the victim were the videos adduced by the State as its Exhibits 1 and 2. Because admissibility of evidence is an issue for the court not the jury, *Brock v. State*, 206 Ga. 397, 400 (57 SE2d 279) (1950), I find no flaw in the State's failure to elicit testimony from the victim

depicted what occurred between her and appellant; she was not asked to review the accuracy of the tapes due to a misdirected maternalism by the DA's office seeking to spare the victim from further embarrassment. The evidence also established that the tapes, seized from appellant's home by police pursuant to a warrant, were found in a manila envelope kept in a closet in a locked safe, which was unlocked by appellant upon request by police. Testimony from State witnesses painstakingly established that from the time the tapes were seized to the time they were played for the jury, there had been no alteration, modification or change of any nature or form to the tapes. The officer who seized the tapes testified that based on his viewing of the tapes shortly after their seizure (a few days' delay occurred while equipment was located to play the tapes) and his subsequent viewing of the tapes during a court recess prior to their being shown to the jury, the contents of the tapes had not been altered or deleted.

I would distinguish all the criminal cases on which the majority relies because they all involved the admissibility of videotapes not made by the defendant. The tapes were made by security cameras, e.g., *Harper v. State*, 213 Ga. App. 444 (4) (445 SE2d 303) (1994), or by law enforcement authorities, e.g., *Allen v. State*, 146 Ga. App. 815 (2) (247 SE2d 540) (1978) (federal sting operation); *State v. Berky*, 214 Ga. App. 174 (447 SE2d 147) (1994) (DUI video taken by officer), or by individuals operating in cooperation with the police. E.g., *Freeman v. State*, 216 Ga. App. 319 (1) (454 SE2d 196) (1995) (local t.v. station accompanying police officer).[11] I cannot agree with the majority that the State must establish that tapes promulgated by a defendant and seized from the defendant's exclusive possession accurately depict scenes filmed by the defendant, when the State is able to establish conclusively that the videotapes were not altered or modified while in the State's possession. Because there is ample support for the conclusion that State's Exhibits 1 and 2 constituted probative and authentic evidence, I cannot agree that the trial court abused its discretion or committed any reversible error by admitting these exhibits. I concur fully in Divisions 1, 2, 3 (a), 4, and 6-11.

---

before the jury that the videos discussed in her testimony were the same as Exhibits 1 and 2.

[11] My review of other Georgia criminal cases dealing with the admissibility of videotapes reveals that all fall into one of these categories. For the admissibility of security videotapes see *Daniels v. State*, 222 Ga. App. 29 (5) (473 SE2d 239) (1996); see also *Milford v. State*, 178 Ga. App. 792 (1) (344 SE2d 505) (1986). For the admissibility of law enforcement videotapes see *Fields v. State*, 223 Ga. App. 569 (3) (479 SE2d 393) (1996); *Dunn v. State*, 218 Ga. App. 329 (461 SE2d 294) (1995); *Bedley v. State*, 189 Ga. App. 90 (3) (374 SE2d 841) (1988).

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 30, 1997.

*Thompson, Fox, Chandler, Homans & Hicks, Joseph A. Homans,* for appellant.

*Lydia J. Sartain, District Attorney, Lucy K. Henry, Jennifer C. Bagwell, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.