## A03A0448. CURRINGTON v. THE STATE.
(578 SE2d 270)

BLACKBURN, Presiding Judge.

Following his conviction by a jury of burglary and robbery, Deandre Currington appeals, arguing that the evidence was insufficient to support his convictions. Finding the evidence sufficient, we affirm.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld.

*Moore v. State.*[1]

Viewed in a light most favorable to the verdict, the evidence shows that on December 1, 2001, James Smith, the 89-year-old vic-

tim, was sitting in his yard when Currington walked up and began a conversation with him. Corrine Cooper, a neighbor who lived across the street from Smith and often checked on him, saw Smith and Currington talking and walked over to Smith's house "to try to get Mr. Smith to go back in the house." She testified further:

> And when I got just about to them, they was arguing about a haircut. And I got closer to him, and I said, "Come on, Red, and go in the house." I said, "Come on now." And he said, "No." And he said — the gentleman over there told him — they was — seemed to be arguing about money. And he said, "You didn't say that, Old Man, when I cut [your] hair the other day." Said, "You didn't say that." He said, "I paid you." I said, "Red, did you pay him?" He said, "Yes, I paid him, and he better leave me alone." And so the gentleman got up that's in there, he got up and walked — started walking across the street, but he was talking back to him, saying things.

Later in the day, as Smith sat sleeping in his living room, a young black male entered his home and began going through his pockets. The man wrested Smith's wallet from him, took $31 from it, and ran. Smith went next door, and neighbors called the police.

Officer Carol Wilson was the first police officer to respond to the call and speak with Smith about the robbery. Wilson, when asked by the attorney for the State whether Smith had previously encountered the individual who robbed him, replied, "Yes, sir. He stated that the male — the black male had cut his hair — his hair earlier that week. He was unable to give me an exact date. But Ms. Cooper also verified that — that the black male was paid by Mr. Smith, I think, it was three dollars for cutting his hair."

Still later in the day, Cooper saw Currington come back across the street to her apartment complex from the direction of Smith's house. When Officer Wilson talked with Cooper, she told him about the encounter between Smith and Currington which she had witnessed earlier, gave a description of Currington, and indicated the direction in which she had seen him walking.

Officer Wilson was joined by Detective Teresa Grant, and the two spoke with Joe Johnson, who lived across the street from Smith. He told the officers that he had seen Currington several times in the neighborhood that week and had seen him that day across the street. He did not know Currington's name, but gave the police a description. Johnson also telephoned his wife. She did not know Currington's name either, but said that she thought he was staying with another neighbor, Lewis Speed.

The officers spoke with Speed, who told them that a young black male, who was visiting his children, had been staying with him but that he knew little about the man. While speaking with the officers, Speed picked up a prescription medicine bottle that was on the coffee table and gave it to the officers, telling them it belonged to his guest. Deandre Currington's name was on the bottle. Currington was eventually located in Kentucky and brought back to Georgia for trial. The evidence was sufficient to support Currington's convictions for burglary and robbery.

Currington points to Smith's own testimony as support for his contention that the evidence of guilt was insufficient. At trial, Smith responded to the questioning of the assistant district attorney as follows:

Q.: Did someone come in your house and take anything from you?
A.: Yeah. (Unintelligible.)
Q.: And who — who came to your house?
A.: Harold Connell.
Q.: Who is that?
A.: Yeah. I say he's out of the chain gang.
Q.: Well, what did this guy look like that came to your house?
A.: How is that?
Q.: What did this fellow look like that came to your house to cut your hair?
A.: Well, I know him when I see him, but he ain't in here.
Q.: You don't see him in the courtroom?
A.: No. Harold Connell is the one got my twenty-three dollars. He's the one took it out of my house. He's the one got — asked — (unintelligible).

Currington argues that the evidence was insufficient to convict him because this testimony indicates that he did not commit the crimes.

"[J]urors are in fact entitled to believe or disbelieve all or any part of the testimony of any witness; and, being the exclusive judges of the credibility of the witnesses, they may accept whatever evidence they deem most reasonable and credible." *Miller v. State*.[2] "It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we indulge every contingency in favor of the verdict." (Punctuation omitted.) *Norris v. State*.[3] It follows that "the inability of the witness to

---

[2] *Miller v. State*, 174 Ga. App. 703, 704 (2) (331 SE2d 616) (1985).
[3] *Norris v. State*, 220 Ga. App. 87, 88 (1) (469 SE2d 214) (1996).

make a positive identification at trial affects the weight of the evidence and the credibility of the witness, which are jury questions. The same is true of contradictions in the witness' identification of defendant shortly after the robbery and at trial." *Harper v. State.*[4]

Smith was 89 years old at the time of the burglary and robbery. When he took the stand at trial, eight months after the crimes, he seemed confused and his testimony was disjointed and often unresponsive. The jury was authorized to discredit Smith's testimony at trial and conclude, based on Smith's statements made shortly after the crimes and the testimony of other witnesses, both that Smith had been robbed by the person who had cut his hair earlier in the week, and that that person was Currington. Accordingly, there was sufficient evidence from which a rational trier of fact could have found Currington guilty beyond a reasonable doubt of burglary and robbery.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED FEBRUARY 13, 2003.

*McGee & McGee, James B. McGee III*, for appellant.
*Richard E. Currie, District Attorney, Douglas P. Smith, Assistant District Attorney*, for appellee.

---

[4] *Harper v. State*, 213 Ga. App. 444, 445-446 (1) (445 SE2d 303) (1994).