## WHOLE COURT

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 3, 2021**

# In the Court of Appeals of Georgia

A21A1110. VALLEJO v. THE STATE.

PHIPPS, Senior Appellate Judge.

Daniel Vallejo, who was convicted of child molestation following a jury trial, appeals from the denial of his motion for new trial. Vallejo contends that the trial court erred by excluding evidence of a prior allegation of molestation made by the victim and that his trial counsel was ineffective in several respects. Finding no error, we affirm Vallejo's conviction.

Viewed in the light most favorable to the verdict, see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence presented at trial shows that Vallejo moved in with the victim and her mother in August 2013. The victim, who was 15 years old at the time of the abuse, testified that Vallejo began having sex with her in October or November of 2013, and that the abuse, which

included vaginal intercourse, continued until October 2014, when she made an outcry to her school guidance counselor. The counselor contacted the police, and Vallejo was arrested.

Vallejo was indicted for two counts of aggravated child molestation (for oral and anal sodomy) and one count of child molestation (for vaginal intercourse). At his 2019 trial, the jury found him guilty of child molestation and not guilty of the remaining counts. Vallejo filed a motion for new trial, which he amended through new counsel. The trial court denied Vallejo's motion (as amended) after a hearing. This appeal followed.

1. Vallejo first contends that the trial court abused its discretion in excluding what Vallejo claims was a prior false allegation of child molestation made by the victim against her father. We disagree.

"In prosecutions for child molestation . . . , Georgia's Rape Shield Statute prohibits testimony regarding a complaining witness's past sexual behavior[, but] it does not prohibit testimony regarding previous false allegations by the complaining witness." *State v. Parks*, 350 Ga. App. 799, 811 (2) (830 SE2d 284) (2019), disapproved of on other grounds by *State v. Hill*, ___ Ga. App. ___ (2) (b) (___ SE2d

___), No. A21A1184, 2021 WL 4316022 (2021) (punctuation omitted).[1] See also

OCGA § 24-4-412 (a).

> Before such evidence can be admitted, however, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists. In this context, a reasonable probability is a probability sufficient to undermine confidence in the outcome. Defendants have the burden of coming forward with evidence at the hearing to establish a reasonable probability that the victim had made a prior false accusation of sexual misconduct.

*Williams v. State*, 266 Ga. App. 578, 580 (1) (597 SE2d 621) (2004) (citations and

punctuation omitted). See also *Parks*, 350 Ga. App. at 811-812 (2). "We will not

disturb the trial court's determination on this threshold issue absent an abuse of

---

[1] In *Parks*, 350 Ga. App. at 811-812 (2), we relied on *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989), overruled in part on other grounds by *State v. Burns*, 306 Ga. 117, 119-124 (2) (829 SE2d 367) (2019), in which the Supreme Court of Georgia held that Georgia's Rape Shield Statute, as it then existed under the old Evidence Code, did not prohibit evidence of prior false allegations made by a victim. In *Smith*, the Supreme Court also held that "the evidentiary rule preventing evidence of specific acts of untruthfulness must yield to the defendant's [constitutional] right of confrontation and right to present a full defense." 259 Ga. at 137 (1). As we explained in *Parks*, in *Burns*, 306 Ga. at 121 (2), the Supreme Court overruled the constitutional holding in *Smith*, but held that the "'evidentiary holding in *Smith* is consistent with the decades-old plain language of the Rape Shield Statute and remains good law in the era of the new Evidence Code.'" 350 Ga. App. at 811 (2) (quoting *Burns*, 306 Ga. at 121 (2)).

discretion." *Cheek v. State*, 265 Ga. App. 15, 17 (2) (593 SE2d 55) (2003). See also *Parks*, 350 Ga. App. at 813 (2).

Before trial, Vallejo filed a "Motion to Admit False Allegations of Sexual Misconduct by the Alleged Victim," contending that the victim and her mother previously had falsely accused the victim's father[2] of child molestation. The trial court held a hearing on the motion, at which Vallejo presented the testimony of a former sheriff's office investigator and the victim's former stepmother. The investigator testified that, in 2005, when the victim was six years old, her mother contacted the sheriff's office to report the victim's outcry against her father. The mother reported that the victim told her that the victim's father "would touch her vagina on the top of her clothes and he would kiss her when he was doing that and told her not to tell." During a forensic interview, the victim disclosed that her father touched her vagina through her clothing numerous times and kissed her neck and ear. The victim, unprompted by the interviewer, picked up a doll, pointed to its vaginal area, and said, "That's where he touches me." The victim also indicated that her mother told her that dolls would be used in the interview. The investigator testified that the mother telling the victim about the dolls was "odd" and raised a "red flag."

---

[2] The victim's father died in 2009.

4

However, she also testified that she believed the victim and her mother. The victim's father denied the allegations. Although the State declined to prosecute, the investigator testified that the district attorney also did not believe that the child was lying.

The victim's former stepmother testified that the victim's father had not known the victim existed until the victim was around two years old. After a test established his paternity, the victim's father legitimated the victim, began paying child support, and had visitation every other weekend. The former stepmother testified that she never saw any evidence that the victim's father had acted inappropriately with the victim and never noticed the victim was afraid to be home alone with her father. In fact, according to the former stepmother, in the weeks before the victim's outcry, the victim "was getting more comfortable and she wanted to come to our house. And wanted to stay and stay longer[.]" The former stepmother claimed that the victim expressed an interest in living with or spending more time with her father and former stepmother but the victim's mother told the stepmother "that would never happen[ ]." The stepmother reported this conversation to the investigator following the victim's outcry.

After the hearing, the trial court denied Vallejo's motion, finding that the evidence presents only "a possibility of falsehood as opposed to a reasonable probability of falsehood." In the order denying Vallejo's motion for new trial, the trial court again stated that it had considered the evidence presented at the hearing and found that Vallejo "had not carried his burden of showing a reasonable probability of falsity."

Vallejo argues that significant evidence of falsity was presented at the hearing and that the trial court abused its discretion in finding otherwise. Of course, "[a]n accused's assertion that the accusations against him are false does not necessarily raise a reasonable probability of falsity." *Cheek*, 265 Ga. App. at 17 (2). See also *Parks*, 350 Ga. App. at 812 (2). And "the fact that an accusation is not prosecuted" likewise "is insufficient to establish its falsity." *Williams*, 266 Ga. App. at 581 (1). See also *Parks*, 350 Ga. App. at 812-813 (2). Nevertheless, Vallejo contends that there was significant additional evidence of falsity presented at the motion hearing. Relying on dubious inferences drawn from the investigator's and former stepmother's testimony, Vallejo maintains that the evidence shows that the victim's mother had a motive to coach the victim into making false allegations against her father and that the victim was, in fact, coached. However, this argument goes to the credibility of the

6

witnesses' testimony; indeed, Vallejo has effectively asserted that the trial court should have credited the stepmother's testimony over the investigator's. This argument presents no ground for reversal. After observing the witnesses' demeanor and considering their interests in the case, the trial court found the investigator's testimony to be credible and concluded that the stepmother's testimony "did not demand a finding of reasonable probability of falsity." The testimony at the hearing supports the trial court's finding that falsity was not established by a reasonable probability. See *Williams*, 266 Ga. App. at 580-581 (1) (upholding exclusion of evidence of alleged prior false statement where the trial court's ruling was based in part on the court's determination of the credibility of the witnesses the court observed in person before ruling on admissibility). See also *Parks*, 350 Ga. App. at 812-813 (2). Accordingly, we find no abuse of discretion in the trial court's exclusion of evidence of the alleged prior false allegation.

We disagree with the dissent's assertion that in *State v. Burns*, 306 Ga. 117, 123 (2) (829 SE2d 367) (2019), the Supreme Court of Georgia rejected the rule established in *Smith v. State*, 259 Ga. 135, 137-138 (1) (377 SE2d 158) (1989), requiring the trial court to make a threshold determination that a reasonable probability of falsity exists before evidence of prior false allegations can be admitted.

In *Burns*, the victim admitted that her prior allegation was false, 306 Ga. at 118, and the Supreme Court therefore did not discuss whether the threshold determination requirement remains good law. See id. at 119-126 (2)-(3).[3]

---

[3] In addition to overruling the constitutional holding in *Smith*, the *Burns* Court overruled "similar holdings" in a number of cases, all of which applied *Smith*'s per se rule of admissibility. *Burns*, 306 Ga. at 124 (2), overruling *Benton v. State*, 265 Ga. 648, 649-650 (5) (461 SE2d 202) (1995); *Ray v. State*, 345 Ga. App. 522, 529 (4) (812 SE2d 97) (2018); *Tyson v. State*, 232 Ga. App. 732, 733-734 (2) (503 SE2d 640) (1998); *Peters v. State*, 224 Ga. App. 837, 839 (4) (481 SE2d 898) (1997); *Hines v. State*, 221 Ga. App. 193, 193-195 (470 SE2d 787) (1996); *Humphrey v. State*, 207 Ga. App. 472, 475-476 (2) (428 SE2d 362) (1993); *Strickland v. State*, 205 Ga. App. 473, 473-474 (422 SE2d 312) (1992); *Ellison v. State*, 198 Ga. App. 75, 75-77 (1) (400 SE2d 360) (1990); and *Shelton v. State*, 196 Ga. App. 163, 164 (4) (395 SE2d 618) (1990).

The *Burns* Court made a key distinction between cases that it overruled and cases of which it only disapproved. For example, while the Court overruled *Benton*, *Tyson*, and *Strickland* (each cited by the dissent), it only conditionally disapproved of *Morgan v. State*, 337 Ga. App. 29, 31 (1) (785 SE2d 667) (2016) (also cited by the dissent). 306 Ga. at 124 (2), n. 3. In *Benton*, the Supreme Court held that, because a reasonable probability of falsity had been shown, the trial court erred in excluding the evidence at issue. 265 Ga. at 649-650 (5). In ruling that the evidence should have been admitted, the Supreme Court necessarily applied the constitutional (per se admissibility) holding in *Smith*. The same analysis applies to our decisions in *Tyson*, 232 Ga. App. at 733-734 (2), and *Strickland*, 205 Ga. App. at 473-474.

In *Morgan*, on the other hand, this Court held that the trial court did not abuse its discretion in *excluding* evidence under *Smith* after finding that the prior allegations were *true*. 337 Ga. App. at 31 (1). Thus, because we had no occasion to directly apply the constitutional per se admissibility rule, the Supreme Court in *Burns* only disapproved of *Morgan* "to the extent that [it] cite[d] or rel[ied] on the constitutional holding in *Smith*." 306 Ga. at 124 (2), n. 3. If the reasonable probability of falsity test had been part of *Smith*'s constitutional ruling, the *Burns* Court would have overruled *Morgan* (as it did *Tyson*, *Benton*, and *Strickland*), rather than merely disapproving of

8

The dissent's reliance on our decision in *Ray v. State*, 356 Ga. App. 266 (841 SE2d 477) (2020) ("*Ray III*"), also is misplaced. In *Ray v. State*, 345 Ga. App. 522, 529 (4) (812 SE2d 97) (2018) ("*Ray I*"), overruled in part by *Burns*, 306 Ga. at 124 (2), we held that the trial court erred in excluding as irrelevant evidence that the victim's aunt had made prior false claims of sexual abuse. We vacated the trial court's judgment and remanded the case with the direction that "the trial court must make the necessary threshold determination regarding falsity." Id. We further instructed the trial court that "[i]f a reasonable likelihood of falsity exists, evidence of the allegations is admissible, and [the defendant] is entitled to a new trial." Id. As the dissent notes, at the time of the *Burns* decision, our decision in *Ray I* was before the Supreme Court on a petition for a writ of certiorari. In the order vacating our decision in *Ray I* and remanding the case to this Court for reconsideration in light of *Burns*, the Supreme Court stated that in *Burns*, it overruled the holding in *Smith* "that, as a

it "to the extent that" it cited or relied on *Smith*'s constitutional holding.

Also worth noting is that the decisions in *Smith*, 259 Ga. at 137-138 (1), *Tyson*, 232 Ga. App. at 733-734 (2), and *Strickland*, 205 Ga. App. at 474, all highlighted that the reasonable probability of falsity test is designed to protect the *victim* (rather than the defendant), which, by its very nature, is evidentiary (rather than constitutional) in nature. The constitutional holding in *Smith*, by way of contrast, was designed to protect the *defendant's* constitutional "right of confrontation and right to present a full defense." 259 Ga. at 137 (1); accord *Burns*, 306 Ga. at 121-123 (2).

9

matter of constitutional law, evidence of a victim's prior false claims of sexual abuse is per se admissible in a sexual assault case 'to attack the credibility of the prosecutrix and as substantive evidence tending to prove that the instant offense did not occur.'" *State v. Ray*, No. S18C1201, 2019 Ga. LEXIS 577, at *1 (Aug. 19, 2019) ("*Ray II*") (quoting *Smith*, 259 Ga. at 137 (1)). The Supreme Court's decision in *Ray II* did not refer to the threshold determination requirement established in *Smith*. See id.

When we reconsidered *Ray* on remand, we focused on the Supreme Court's overruling of the rule rendering prior false allegations of sexual abuse per se admissible. See *Ray III*, 356 Ga. App. at 266, 268-270. We described the issue "identified by our Supreme Court" in *Ray II* as "whether evidence of the deceased aunt's prior false reports," which the trial court had deemed inadmissible as irrelevant – without having conducted a determination as to whether there was a reasonable probability that they were false – "should be admissible under [OCGA § 24-4-403 ("Rule 403")]."[4] Id. at 268. We stated that in our previous opinion, we noted that "it may well be that testimony showing that the victim's deceased aunt, who reported the

_____

[4] That statute provides: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

10

crimes at issue, had previously made false claims of sexual abuse would be relevant to the veracity of the allegations here." Id. at 268-269 (citation and punctuation omitted). We vacated the defendant's conviction and remanded the case with the direction that the trial court hold a hearing to determine "whether, under Rule 403, the probative value of evidence as to the victim's aunt's prior false accusation is substantially outweighed by its prejudicial effect." Id. at 270. We agree with the dissent that, following *Burns*, trial courts must determine the admissibility of false-allegation evidence by applying "the familiar and usual rules of evidence." See *Burns*, 306 Ga. at 124 (2). However, this procedure necessarily requires an initial determination of whether the prior allegations were, in fact, false (or, more precisely, that there was a reasonable probability that they were false).

As noted previously, in *Parks*, 350 Ga. App. at 811 (2), we recognized that the constitutional holding of *Smith* had been overruled in *Burns* but that the evidentiary holding of *Smith* remains good law. In that context, we applied the threshold determination test. Id. at 811-812 (2). We believe our analysis was correct in *Parks*

11

and that the threshold determination requirement remains good law after *Burns*, contrary to the dissent's analysis.[5]

2. Vallejo contends alternatively that the victim's prior allegation against her father was relevant to show the victim's knowledge of sexual acts and her comfort level with the process of prosecution. Specifically, prior to trial, Vallejo filed a notice of intent to introduce evidence of the victim's "prior sexual assault by her biological father" for the purpose of "inform[ing] the jury that the alleged victim and her mother . . . have a 'fund of a knowledge' to make allegations – i.e. they have experience working with police, disclosing alleged abuse, and encouraging a prosecution of the same."

After a hearing, the trial court first found the Rape Shield Statute inapplicable to the evidence at issue, citing *Lemacks v. State*, 207 Ga. App. 160, 161 (427 SE2d 536) (1993), in support of its ruling. Second, relying on *Blackwell v. State*, 229 Ga. App. 452, 454 (2) (494 SE2d 269) (1997), the court observed that "Georgia courts recognize a 'long-standing rule barring introduction of evidence of prior unrelated molestation'" and that one of the few exceptions to this rule occurs "where the

_____

[5] Vallejo does not argue that the threshold determination requirement no longer applies; he simply argues that the trial court erred in determining that there was not a reasonable probability of falsity.

evidence is offered to show other possible causes for the victim's injuries or symptoms." The trial court therefore ruled that if the State offered evidence of the victim's injuries or symptoms allegedly caused by sexual abuse, Vallejo could offer evidence of the alleged prior sexual abuse to explain the injuries. Based on *Lemacks* and *Blackwell*, as well as OCGA §§ 24-4-401 and 24-4-403, the trial court barred the defense from offering evidence of the prior abuse "simply to explain" the victim's "vocabulary or 'fund of knowledge.'" However, the trial court allowed the defense to renew its request to offer evidence of the prior abuse if the State "opened the door to such evidence."

Vallejo argues that the trial court erred by relying on the "long-standing rule" referred to in *Blackwell* because that rule is based on an application of the rules of evidence as they existed prior to January 1, 2013, well before Vallejo's trial. Vallejo also argues that the evidence of the victim's prior allegation is admissible under the new Evidence Code. "The trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Jones v. State*, 305 Ga. 750, 751 (2) (827 SE2d 879) (2019) (citation and punctuation omitted). Pretermitting

13

whether the trial court erred by relying on either *Lemacks* or *Blackwell*,[6] the court did

not abuse its discretion by excluding the evidence under OCGA §§ 24-4-401, 24-4-

402, and 24-4-403.

> Under OCGA § 24-4-401 ("Rule 401"), "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although OCGA § 24-4-402 provides that, generally, "all relevant evidence shall be admissible," it also provides that "evidence which is not relevant shall not be admissible." And even "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

*State v. Stephens*, 310 Ga. 57, 59 (1) (849 SE2d 459) (2020) (citations and

punctuation omitted). "A trial court does not abuse its discretion by excluding

irrelevant evidence." Id. (citation and punctuation omitted).

Vallejo contends that if the victim was previously molested by her father, that

fact would make it more probable that she would be aware of sexual acts. However,

---

[6] Although the trial court cited *Blackwell*, it also based its decision on the new Evidence Code.

the victim's description when she was six years old of her father's acts was very different from the sexual acts she described at trial. At trial, the victim testified to the details of various sex acts in which Vallejo forced her to engage, including vaginal, anal, and oral sex. Contrary to Vallejo's argument, evidence of the victim's allegation made ten years prior to her outcry against Vallejo that her father had touched her vagina over her clothes would not have helped explain her knowledge of the multiple, detailed sexual acts that she described at trial. Consequently, the trial court did not abuse its discretion in excluding the evidence of the victim's prior allegation of molestation by her father to establish her knowledge of sexual acts.

Vallejo also contends that the victim's knowledge of the process of investigating an allegation of molestation is relevant because it explains how she could have devised a plan to remove Vallejo from her life by making a false allegation against him. Vallejo argues that the evidence of the prior allegation would have undermined the victim's credibility by explaining how a child could have fabricated the allegations against him.

Contrary to Vallejo's argument, evidence that the victim made an allegation of child molestation against her father at the age of six does not tend to (a) show how the victim, at the age of sixteen, would have the knowledge necessary to come up

15

with a plan to falsely accuse Vallejo of molesting her or (b) otherwise call into question her credibility in that regard. Indeed, evidence that the victim had prior experience with the process of making an allegation of child molestation was wholly irrelevant to the issue of whether Vallejo committed the acts alleged by the victim and was thus properly excluded by the trial court. See *Jones*, 305 Ga. at 753 (2) (c) (trial court did not abuse its discretion by excluding photograph that did not help determine whether the defendant or another man committed the crime). Even if the evidence that the victim had made a prior allegation of child molestation arguably bore some minimal relevance to Vallejo's guilt in this case, the trial court acted within its discretion in concluding that the minor probative value of any such evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay [or] waste of time," which the trial court implicitly did by citing OCGA § 24-4-403 in its analysis. Consequently, even assuming the dissent is correct that the Rape Shield Statute does not bar the admission of the prior allegation evidence, the trial court did not err in excluding the evidence under the applicable evidentiary rules.

3. Vallejo alleges that his trial counsel rendered constitutionally ineffective assistance in three instances. To prevail on these claims, he must show both that his

trial counsel's performance was deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (III) (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to satisfy either prong of the *Strickland* test, "it is not incumbent upon this Court to examine the other prong." *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish deficient performance, an appellant "must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in light of all the circumstances and prevailing norms. Id. (citation and punctuation omitted).

To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694 (III) (B). "In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo." *Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003) (citation omitted). After reviewing Vallejo's claims in accordance with these standards, we conclude

17

that Vallejo has not met his burden of demonstrating that his trial counsel was ineffective.

*(a) Failure to object to the State's comment on the victim's knowledge of sexual acts.* During closing argument, the State discussed the victim's testimony regarding a specific act of oral sex in which Vallejo forced her to engage, and stated, "I know they grow up fast but that's just way too much knowledge for a child." Vallejo argues that his trial counsel's failure to object to this comment and move either for a mistrial or to reopen the evidence to permit Vallejo to present evidence of the victim's relationship with a classmate and of her prior abuse by her father amounted to deficient performance.

As discussed in Division 2, prior to trial, Vallejo filed a pleading titled, "Notice of Defendant's Intent to Introduce Acts of Prior Sexual Behavior." In addition to seeking to admit evidence that the victim made a prior allegation of molestation against her biological father, Vallejo also sought to introduce evidence that DNA testing of the victim's bed sheet showed that she had engaged in sexual activity with another male during the same time period in which she alleged Vallejo molested her. Vallejo further sought to admit evidence that he confronted the victim about having sex with a classmate.

Finding the Rape Shield Statute applicable, the trial court excluded evidence of multiple sources of DNA on the bed sheet but ruled that if the State offered evidence obtained from the bed sheet at trial, Vallejo would be permitted to introduce evidence of the other DNA found on the bed sheet pursuant to the "source of evidence" exception to the Rape Shield Statute. The trial court allowed Vallejo to offer evidence that he and the victim had a conflict concerning her relationship with another student and that the victim made an outcry after Vallejo threatened to obtain her text message history, but prohibited Vallejo from offering any evidence of any sexual or other physical relationship between the victim and another student.

Vallejo contends that if his trial counsel had objected to the State's argument regarding the victim's knowledge of sexual acts, the trial court "should have" either granted a mistrial or allowed Vallejo to reopen the evidence and present the results of the scientific testing of the victim's bed sheet and evidence of the victim's past allegations of molestation against her biological father. We do not agree.

In prosecutions for aggravated child molestation and child molestation, Georgia's Rape Shield Statute prohibits testimony regarding a complaining witness's past sexual behavior, with limited exceptions. OCGA § 24-4-412. Those exceptions are:

19

(1) Evidence of specific instances of a victim's or complaining witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

(2) Evidence of specific instances of a victim's or complaining witness's sexual behavior with respect to the defendant if it supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution;

(3) Evidence of specific instances of a victim's or complaining witness's sexual behavior with respect to the defendant or another person if offered by the prosecutor; and

(4) Evidence whose [sic] exclusion would violate the defendant's constitutional rights.

OCGA § 24-4-412 (b). Even if the evidence of the scientific testing of the bed sheet were relevant to the victim's knowledge of sexual acts, it was inadmissible unless it fell within one of the limited exceptions in the Rape Shield Statute. See *White v. State*, 305 Ga. 111, 118 (2) (823 SE2d 794) (2019) (no relevance exception to Rape Shield Statute). On appeal, Vallejo has not established that any exception to the Rape Shield Statute would have applied here if his trial counsel had objected to the prosecutor's statement regarding the victim's sexual knowledge and asked the trial court to reopen the evidence. Furthermore, as discussed in Division 2, evidence of the victim's prior allegation against her father is not relevant to explain her knowledge

20

of the sexual acts that she described at trial. Therefore, that evidence would not have been admissible even if Vallejo's trial counsel had objected to the State's argument regarding the victim's sexual knowledge. "The failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." *White v. State*, 307 Ga. 882, 889 (3) (c) (838 SE2d 828) (2020) (citation and punctuation omitted). Vallejo therefore has failed to demonstrate ineffective assistance on this ground.

Furthermore, Vallejo has not carried his burden of showing that his trial counsel performed deficiently by failing to move for a mistrial. "Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Hill v. State*, 310 Ga. 180, 189 (6) (850 SE2d 110) (2020) (citation and punctuation omitted). Vallejo has not demonstrated that the trial court would have granted a motion for a mistrial based on the State's passing comment made during closing argument if his trial counsel had requested one. "Because the trial court would have acted within its discretion in denying a motion for mistrial, the failure of [Vallejo's] trial counsel to make a motion

21

that the court was authorized to deny does not establish ineffective assistance by that counsel." Id. at 190 (6) (citation and punctuation omitted).

*(b) Failure to object to the State's misstatement of the law of reasonable doubt.* Vallejo next alleges his trial counsel was ineffective for failing to object to the State's purported misstatements of law regarding reasonable doubt made during closing argument. Specifically, Vallejo takes issue with the following:

> If you believe the defendant is guilty . . . you're authorized to convict. If you believe the defendant is guilty but you wish to have a little more evidence, you're still authorized to convict because everything you've heard about this case you heard in this courtroom. So if you believe he's guilty, and you wish you had a little more, you still believe he's guilty. You're authorized to convict.

Relying on *Debelbot v. State*, 308 Ga. 165, 167 (839 SE2d 513) (2020), in which the Supreme Court held that defense counsel was ineffective for failing to object to a prosecutor's "obviously wrong" description of reasonable doubt during closing argument, Vallejo contends that his trial counsel's failure to object here constituted deficient performance. In his estimation, if trial counsel had objected, the trial court "would have informed the jury that it would instruct [the jury] on the law of reasonable doubt and that [the jury would be] bound to follow those instructions."

22

At the motion for new trial hearing, one of Vallejo's lawyers testified that, although he also believed the State's attempt to define proof beyond a reasonable doubt was misleading, he believed he had sufficiently addressed the issue in his closing argument. During closing argument, the lawyer told the jury:

> At the end of the day the Judge will tell you, at the end of the day if your minds are wavering, your minds are unsettled or unsatisfied that is a doubt of the law and you have one duty and that's a duty to acquit. If your minds are wavering, unsettled or unsatisfied that is a reasonable doubt. And that's a doubt of the law and you have to acquit. I don't care what [the prosecutor] says, he's wrong. The Judge will tell you the law and that's what it is.

The record shows that the trial court correctly instructed the jury on the presumption of innocence, burden of proof, and reasonable doubt. The trial court further charged the jury that it was bound to follow the court's instructions.

"[T]he making of objections falls within the realm of trial tactics and strategy and thus usually provides no basis for reversal of a conviction." *Moon v. State*, 288 Ga. 508, 516 (9) (705 SE2d 649) (2011) (citation and punctuation omitted). Furthermore, the trial court correctly charged the jury on reasonable doubt, and "we presume that jurors follow the law." *Venturino v. State*, 306 Ga. 391, 400 (4) (830 SE2d 110) (2019). Thus, any error in the State's characterization of reasonable doubt

23

was cured by the trial court's instructions to the jury. See *Draughn v. State*, 311 Ga. 378, 383 (2) (b) (858 SE2d 8) (2021) (where the jury charge explained presumption of innocence, burden of proof, and reasonable doubt accurately and at length, any error in the State's characterization of reasonable doubt was cured). "Assuming without deciding that [Vallejo's] trial counsel was deficient for not objecting to the prosecutor's statements about reasonable doubt, [Vallejo] has failed to show a reasonable probability that the result of his trial would have been different but for those statements." Id. (footnote omitted). Consequently, Vallejo has failed to establish prejudice, and this claim of ineffective assistance fails.

*(c) Failure to challenge "partial match" evidence.* At trial, a Georgia Bureau of Investigation forensic biologist testified that DNA on a white towel[7] found in the victim's bathroom matched Vallejo's DNA. DNA from another individual was identified on the same towel. The forensic biologist testified that for:

> [t]he second individual I only obtained three markers at three different locations. So just to put that into reference we tested for 16 locations and were able to only obtain information at three locations. So that means

---

[7] The victim testified that the night before she reported Vallejo's abuse to her school guidance counselor, Vallejo had sex with her, cleaned himself off with a white towel, and left the towel on the floor of her bathroom. A white towel from the victim's bathroom was taken into evidence by law enforcement.

that that person was only contributing a very, very small amount of DNA to the sample. But the information that was there at those three locations matched back to the profile of [the victim].

Vallejo alleges that his trial counsel performed deficiently by failing to move to exclude any mention of a "partial match" between the second DNA profile on the towel and the victim's known DNA profile. Vallejo argues that his trial counsel should have moved to exclude this "partial match" evidence, which he characterizes as "misleading and scientifically invalid," pursuant to OCGA § 24-4-403, or challenged its scientific reliability pursuant to *Harper v. State*, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982). Our review of the record shows that trial counsel employed a different strategy to challenge this evidence.

At the motion for new trial hearing, all three of Vallejo's trial attorneys testified that they found the "partial match" evidence misleading. However, trial counsel also testified that they did not consider a *Harper* challenge an appropriate means by which to contest the evidence. Instead, counsel challenged this evidence by aggressively and thoroughly cross-examining the GBI forensic biologist, calling a defense expert to rebut the testimony of the forensic biologist, and attacking the credibility of the "partial match" testimony in closing argument. On cross-

25

examination, Vallejo's trial counsel elicited testimony from the GBI forensic biologist that she could not say to a reasonable degree of scientific certainty that the victim's DNA was on the towel. In fact, she testified that she would disagree with any argument made by the State "that this towel in fact identifies [the victim's] DNA. Vallejo's expert agreed. During closing argument, Vallejo's trial counsel highlighted the misleading nature of the testimony, noting that "it took . . . cross-examination of that witness . . . to actually bring forth to you, well, when I say match, I don't really mean match, I don't know [whose DNA] that is." We cannot say this strategy was unreasonable.

"A defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under similar circumstances, would have made it." *Davis v. State*, 306 Ga. 140, 148 (3) (g) (829 SE2d 321) (2019) (citation and punctuation omitted). "Counsel's reasonableness is evaluated in conjunction with the attendant circumstances of the challenged conduct and judged from counsel's perspective at the time with every effort made to eliminate the distorting effects of hindsight." Id. at 143-144 (3) (citation and punctuation omitted). "Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed." Id. at 144. Vallejo's trial counsel

26

pursued multiple avenues by which to challenge the "partial match" testimony: cross-examination, testimony by Vallejo's expert, and closing argument. Vallejo's claim that his trial counsel should have challenged this evidence through other means is merely an argument that there was another, or better, way for counsel to have performed. Consequently, Vallejo has not demonstrated that his trial counsel performed deficiently, and this claim of ineffective assistance also fails.

4. Finally, Vallejo argues that the cumulative effect of errors by the trial court and trial counsel warrants a new trial. "Although we may now consider whether the cumulative effect of errors requires a new trial, where . . . there are not multiple errors, there can be no cumulative error." *Williams v. State*, 358 Ga. App. 152, 157 (c) (853 SE2d 383) (2021). The only potential error that we have either found or pretermitted was trial counsel's failure to object to the prosecutor's statements regarding reasonable doubt during closing argument. Because we have found only

one potential error at trial on the grounds asserted by Vallejo, Vallejo's claim of cumulative error fails. See id.

*Judgment affirmed. Dillard, P.J., and Mercier, Reese, Brown, and Hodges, JJ., concur. Gobeil, J., concurs fully and specially. Pipkin, J., concurs fully in Divisions 3 and 4, and concurs specially in Divisions 1 and 2. Doyle, P.J., concurs fully in Divisions 3 and 4, and joins in judgment only with Judge Pipkin in Divisions 1 and 2. Pinson, J., concurs in Divisions 2, 3, and 4, and concurs in judgment only in Division 1. Rickman, C.J., Barnes, P.J., Miller, P.J., and Markle, J., concur in Divisions 2, 3, and 4, and dissent without opinion in Division 1. McFadden, P.J., dissents.*

# In the Court of Appeals of Georgia

A21A1110. VALLEJO v. THE STATE.

GOBEIL, Judge, concurring fully and specially.

I concur fully in the majority's opinion. The dissent asserts that in *State v. Burns*, 306 Ga. 117, 123-124 (2) (829 SE2d 367) (2019), our Supreme Court rejected the rule established in *Smith v. State*, 259 Ga. 135 (377 SE2d 158) (1989), requiring a trial court to make an initial determination that a reasonable probability of falsity exists before evidence of a victim's prior false allegations can be admitted. Like the majority, I disagree. I write separately to share additional thoughts in this area post-*Burns*.

The *Burns* Court characterized the constitutional holding in *Smith* as "a per se rule of admissibility for evidence of prior false allegations *where falsity has been established*, notwithstanding other rules of evidence." *Burns*, 306 Ga. at 121 (2) (emphasis supplied). The *Burns* Court went on to overrule the constitutional holding in *Smith*, while clarifying that "the evidentiary holding[1] of *Smith* has survived the enactment of Georgia's new Evidence Code." Id. at 120-124 (2). While not explicit in *Burns*, the reasonable probability of falsity test cannot be considered part of the constitutional holding in *Smith*, as suggested by the dissent, for the simple reason that a court has to make a determination of falsity "before falsity has been established," which is an evidentiary issue. Id. at 121 (2). Importantly, the *Burns* Court did not need to reach the issue of whether the defendant in that case had shown a reasonable probability of falsity because the victim admitted that a prior allegation of sexual abuse was "made up," and the trial court recognized that the victim's "attempted rape statement was false." 306 Ga. at 118, 125 (3). With the falsity of the prior allegations already established in *Burns*, the Court explained "there is no constitutional

---

[1] Post-*Burns*, the exact scope of the evidentiary holding in *Smith* remains unclear, but at a minimum it states that evidence of a false allegation is not barred by the Rape Shield Statute. *Burns*, 306 Ga. at 118-119 (1); *Smith*, 259 Ga. at 137-138 (1).

2

impediment to applying OCGA § 24-4-403" in determining whether the evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. at 125-126 (3) & n. 4 (quoting OCGA § 24-4-403). By contrast, in the instant case, as was the case in *State v. Parks*, the trial court made an initial determination that the defendant had failed to meet his burden "to establish a reasonable probability of falsity" with respect to the victim's prior allegations of abuse, and thus, deemed this evidence inadmissible. 350 Ga. App. 799, 812-813 (2) (830 SE2d 284) (2019). Because the *Burns* Court did not reach the reasonable probability of falsity test, this standard remains intact. For this same reason, I believe that our holding in Division 2 of *Parks* remains viable post-*Burns*.

What remains unclear post-*Burns* is whether the reasonable probability of falsity test is a threshold issue, and only after falsity has been established can the trial court employ "any number of familiar and unquestionably constitutional evidentiary rules [including OCGA § 24-4-403] that authorizes the exclusion of relevant evidence." *Burns*, 306 Ga. at 125-126 (3) (citation and punctuation omitted). On the other hand, the determination of falsity could be viewed as part of the analysis

3

regarding the admissibility of prior allegations through the application of "the familiar and usual rules of evidence" including an assessment of relevancy under OCGA § 24-4-401, as well as the balancing test required by OCGA § 24-4-403. Id. at 124 (2).[2] Post-*Burns*, this remains an open question and one that we need not answer here.

While I appreciate (and share) the dissent's apparent concern with "judge-made" law, the dissent's approach risks committing the same ill it reproaches. As an intermediate appellate court, we are limited to applying existing law. We are not authorized to apply the law as anyone thinks it should be, nor as anyone may believe the Supreme Court in the future may declare it to be. Perhaps the Supreme Court in *Burns* intended to overrule the reasonable probability of falsity test set forth in *Smith* and perhaps it explicitly will do so in the future. But, it did not say so in *Burns* and we are limited to what it said. In my view, the dissent takes a leap we are not positioned to take in grafting its assumption into the Supreme Court's ruling.[3]

---

[2] In either scenario, the trial court is required to make a determination of whether a reasonable probability exists that the prior allegations were, in fact, false, before determining whether the evidence is admissible based on the application of the OCGA § 24-4-403 balancing test.

[3] The dissent characterizes the *Burns* decision as overruling or disapproving of several of our decisions for the simple reason that these cases applied the reasonable

4

probability of falsity test. However, a plain reading of these cases shows that the Supreme Court overruled or disapproved of these holdings "to the extent that they cite or rely on the constitutional holding in *Smith*." *Burns*, 306 Ga. at 124 (2) & n. 3. As stated above, *Burns* described the constitutional holding in *Smith* as "a per se rule of admissibility for evidence of prior false allegations where falsity has been established, notwithstanding other rules of evidence." Id. at 121 (2). See, e.g., *Benton v. State*, 265 Ga. 648, 649-650 (5) (461 SE2d 202) (1995) (trial court erred in ruling false-allegation evidence inadmissible where defendant had made an offer of proof that established a reasonable probability of falsity; "[s]ince the threshold determination was satisfied under *Smith*, . . . *it was error* to withhold such evidence from the jury") (emphasis supplied); *Tyson v. State*, 232 Ga. App. 732, 733-734 (2) (503 SE2d 640) (1998) (where victim admitted to making up or exaggerating allegations of abuse, "[w]e agree[d] with defendant that evidence concerning these false allegations of molestation *should have been admitted*") (emphasis supplied).

5

# In the Court of Appeals of Georgia

A21A1110. VALLEJO v. THE STATE.

PIPKIN, Judge, concurring in part and concurring specially in part.

I fully concur with Divisions 3 and 4 of the majority opinion, but I concur specially with respect to Divisions 1 and 2 because I conclude that any possible error related to the trial court's exclusion of the victim's alleged prior false outcry was harmless.

What Vallejo did to the victim – countless times and over the course of years – was horrific. While the victim was a minor at the time of the abuse, she was 20 years old at the time of trial, and she recounted in extensive and graphic detail the nearly innumerable instances of sexual abuse in this case. For example, the victim testified Vallejo would insist on anal sex when she was menstruating. She testified

that Vallejo would "prepare" her for anal sex and explained that he would "lick his hand and then he would take his spit that he had licked off of his hand and he would rub it on his penis and he would also rub it on [her] butt." The victim testified that she asked Vallejo to stop because of the pain, but that he continued and that he would ejaculate in her anus.

The truth can be found in the testimony of one, and to counter this compelling testimony, Vallejo sought to tell the jury that the victim – when she was only six years old – had once accused her father of sexual abuse, but that her father denied the allegation and the incident was not prosecuted. After a lengthy and appropriate hearing, the trial court excluded the evidence from trial, concluding that there was insufficient evidence of falsity. The majority opinion, special concurrence, and dissent expend great energy and ink grappling with the legal soundness of the trial court's decision and the application of the recent decision *State v. Burns*, 306 Ga. 117 (829 SE2d 367) (2019). To be sure, the ultimate import of *Burns* and the standard by which a trial court evaluates the admissibility of an alleged prior outcry are certainly unclear, but what is clear is that the answers to those questions do not matter here. Instead, we should use the appropriate legal lens and reasonable inferences regarding human behavior to reach the inescapable conclusion that the evidence about which

2

Vallejo complains is inconsequential in this case and is therefore controlled by the touchstone of appellate review: where there is no harm, there is no reversible error.[1]

Here, the jury heard testimony that Vallejo was seen cuddling the victim on multiple occasions, that he was seen holding her hand on another occasion, and that he purchased lingerie for the victim. The State also adduced a "selfie" in which Vallejo and the victim are described as cuddling. But the evidence does not stop there; if a picture is worth a thousand words, then forensic evidence speaks volumes. Based on the victim's statement to police, law enforcement collected a discarded towel from the victim's bathroom[2] – which she did not share with anyone – that

---

[1] The trial court concluded – albeit with an arguably outdated standard – that Vallejo had failed to present evidence establishing with any level of certainty that the prior allegation was, in fact, false. The trial court was authorized to conclude that the evidence presented by Vallejo establishes nothing more than a mere possibility that the prior allegation was false. Indeed, notwithstanding the father's denial and the lack of prosecution, there was also ample and unequivocal testimony at the pretrial hearing that law enforcement believed the victim and did not find her untruthful. Thus, whatever nomenclature the trial court may have used in reaching its ruling, it is clear that the trial court did not believe that Vallejo had established falsity. Without falsity, the prior outcry – which occurred 14 years prior to trial – is simply irrelevant and inadmissible as is forged by the guidance of OCGA §§ 24-4-403 and 412. The trial court's ruling is entitled to substantial deference. See *Patterson v. State*, 350 Ga. App. 540, 544 (2) (829 SE2d 796) (2019).

[2] The jury learned that the various family members all had different colored towels and that there was no reason why a white towel – which would have been used

3

Vallejo was alleged to have used to clean himself after an instance of sexual contact.[3] The jury learned that sperm and seminal fluid were found on the towel and that DNA recovered from the towel matched Vallejo and was a partial match for the victim.

In short, the evidence against Vallejo was not merely sufficient, it was compelling, and it was significant; Vallejo repeatedly exploited and violated the victim. While Vallejo argues that the prior-outcry evidence colors the victim's testimony and raises questions about her truthfulness – which would solely be in the province of the trial court or fact finder – this argument is unconvincing. Although the jury would have learned that the victim made a prior outcry for which there was no prosecution, it is reasonable to assume that the jury would likely *also* have learned that individuals involved in the investigation found the then-six-year-old victim to be credible.

---

by Vallejo or the victim's mother – would have been in the victim's bathroom, which held the victim's teal-colored towels.

[3] Vallejo argues that, "[e]ven if the towel is viewed as evidence of sex, it could not have constituted [evidence of] child molestation because [the victim] was sixteen years of age at the time" the towel was allegedly used. Even if the towel is not direct evidence of his guilt of the charged offenses, it certainly corroborates the victim's testimony of on-going sexual contact, particularly in light of his defense that he had *no* sexual contact with the victim.

4

In the end, while *State v. Burns* eviscerated long-standing – and well-understood – precedent without providing clear guidance for future cases involving allegedly false outcry evidence, this is not the case for this Court to mull over the legal complexities of that decision or to delve into a jurisprudential quagmire; indeed, Vallejo's focus on the uncertainty wrought by *Burns* is nothing more than a deflection from the substantial evidence of his guilt and an attempt to lure this Court into wrestling with a greased pig, which is not only exhausting but unproductive. In my mind and experience, our disagreements in this case are purely academic because, given the strength of the evidence of Vallejo's guilt and the marginal benefit of the alleged false outcry evidence, it is highly probable that any error here did not contribute to the verdict. See *Walker v. State*, 360 Ga. App. 211, 216 (3) (860 SE2d 868) (2021).

For these reasons, I concur fully with Divisions 3 and 4 but concur specially with respect to Divisions 1 and 2.

5

# In the Court of Appeals of Georgia

A21A1110. VALLEJO v. THE STATE.

McFADDEN, Presiding Judge, dissenting.

I respectfully dissent. I disagree with Divisions 1 and 2, which concern the trial court's treatment of Vallejo's requests to present evidence related to the victim's allegation that she was molested by her biological father when she was five years old. Vallejo has argued for the admission of evidence of this incident for two different purposes: to show that both the victim and her mother made a prior, false allegation; and, even if the prior allegation was true, to show the victim's "previous knowledge of sexual acts and abuse, and to show her comfort level with the process of prosecution."

The trial court ruled the evidence inadmissible to show a false allegation because Vallejo did not make a threshold showing of a reasonable probability of falsity. But as detailed below, our Supreme Court subsequently rejected this extra-statutory threshold procedure in *State v. Burns*, 306 Ga. 117 (829 SE2d 367) (2019). Under *Burns* a trial court must determine the admissibility of false allegation evidence under the "familiar and usual rules of evidence," id. at 124 (2) — in particular OCGA § 24-4-403, which authorizes exclusion of relevant evidence due to prejudice, confusion, or waste of time.

So I would vacate Vallejo's conviction and remand the case for the trial court to decide the admissibility of evidence of this incident for the purpose of showing a false allegation under Rule 403 and any other applicable rule of evidence. That is what we did in another post-*Burns* case, *Ray v. State*, 356 Ga. App. 266 (841 SE2d 477) (2020). And because the trial court must reconsider the admissibility of evidence of this incident to show a false allegation, I would also direct the trial court to reconsider its admissibility to support inferences drawn from the victim's knowledge about molestation proceedings.

1. *Admissibility of the false-allegation evidence.*

The trial court excluded the false-allegation evidence after determining that Vallejo had not shown a reasonable probability of the allegation's falsity. This determination followed our Supreme Court's decision in *Smith v. State*, 259 Ga. 135, 137-138 (1) (377 SE2d 158) (1989), in which the Court held that, "before [false-allegation] evidence can be admitted, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists." Id. at 137-138 (1) (citation and punctuation omitted).

The *Smith* Court devised this rule in response to an argument by the state that false-allegation evidence "relate[d] to the victim's character, which [could] only be attacked by evidence of the victim's general reputation for veracity [and] that any specific instances of untruthfulness are prohibited." *Smith*, 259 Ga. at 137 (1). Concerned that excluding false-allegation evidence on that ground would conflict with "the defendant's right of confrontation and right to present a full defense[,]" id., the *Smith* Court adopted an approach used in other states that had addressed such constitutional considerations. See, e. g., *Clinebell v. Commonwealth*, 368 SE2d 263, 265-266 (Va. 1988) (holding that, "[a]t least in the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-

3

examination" and concluding that, in such cases, evidence of prior false accusations may be admitted using the threshold determination that would be adopted by *Smith*).

In adopting that procedure, the *Smith* Court established a rule under which false-allegation evidence — although barred by other applicable rules of evidence — was nevertheless admissible to accommodate a defendant's constitutional rights, so long as there was a reasonable probability of the allegation's falsity. *Smith*, 259 Ga. at 137 (1). If there was a reasonable probability of the allegation's falsity, then the evidence was admissible per se, to avoid encroaching on the defendant's constitutional rights. See id.

But the Evidence Code of 2013 abrogated *Smith*'s judge-made rule. There is no statutory basis in Georgia for that procedure. And "the new Evidence Code, which took effect on January 1, 2013, precludes courts from promulgating or perpetuating judge-made exclusionary rules of evidence[.]" *State v. Orr*, 305 Ga. 729 (827 SE2d 892) (2019).

In *Burns*, a decision issued shortly after the trial court made the evidentiary ruling in this case, our Supreme Court rejected *Smith*'s judge-made rule as "wrongly decided." *Burns*, 306 Ga. at 123 (2). In that decision, the Court characterized *Smith*'s threshold procedure as "a per se rule of admissibility for evidence of false allegations

where falsity has been established, notwithstanding other rules of evidence," and the Court observed that *Smith* had "seemingly relie[d] on the Sixth and Fourteenth Amendments" to create that rule. Id. at 121 (2). The *Burns* Court determined that those "constitutional provisions demand no such rule," id., and, applying principles of stare decisis, concluded that this "constitutional holding" in *Smith* should be overruled and that trial courts instead should decide the admissibility of false-allegation evidence by "applying the familiar and usual rules of evidence, which trial courts routinely do every day." Id. at 124 (2).

It is true, as Judge Gobeil's concurring opinion points out, that *Burns* did not involve an initial determination by a trial court that the defendant had failed to meet the burden of establishing a reasonable probability of falsity. But the *Burns* Court overruled or disapproved numerous Georgia appellate court decisions applying *Smith*'s threshold "reasonable probability of falsity" procedure, see *Burns*, 306 Ga. at 124-125 (2) & n. 3, and many of those overruled or disapproved decisions *did* involve such initial trial court determinations. See, e. g., *Benton v. State*, 265 Ga. 648, 649-650 (5) (461 SE2d 202) (1995) (holding that the trial court erred in ruling false-allegation evidence was inadmissible because the defendant made an offer of proof that established a reasonable probability of its falsity), overruled by *Burns*, 306 Ga.

5

at 124 (2) (holding that *Benton* contained a similar constitutional holding to *Smith*); *Morgan v. State*, 337 Ga. App. 29, 31 (1) (785 SE2d 667) (2016) (holding trial court did not err in excluding evidence about victim's purportedly false prior allegation after determining that the facts alleged by the victim were true), disapproved by *Burns*, 306 Ga. at 124 (2) n. 3 (suggesting that *Morgan* cited or relied on *Smith*'s constitutional holding); *Tyson v. State*, 232 Ga. App. 732, 733-734 (2) (503 SE2d 640) (1998) (holding that the trial court erred in "apparently conclud[ing] that . . . there was no 'reasonable probability' that the [prior molestation] allegations were false"), overruled by *Burns*, 306 Ga. at 124 (2) (holding that *Tyson* contained a similar constitutional holding to *Smith*); *Strickland v. State*, 205 Ga. App. 473, 474 (422 SE2d 312) (1992) (holding that the trial court erred in determining that there was no reasonable probability that prior allegations of child molestation were false and therefore excluding evidence of them), overruled by *Burns*, 306 Ga. at 124 (2) (holding that *Strickland* contained a similar constitutional holding to *Smith*).

One of the decisions that *Burns* expressly overruled was this court's decision in *Ray v. State*, 345 Ga. App. 522 (812 SE2d 97) (2018), in which we had vacated and remanded a trial court's ruling on the admissibility of evidence of a prior false allegation made by the victim's aunt on the ground that the trial court had *not* made

6

the necessary "reasonable probability of falsity" determination. See *Burns*, 306 Ga. at 124 (2). At the time of the *Burns* decision, our decision in *Ray* was before the Supreme Court on a petition for writ of certiorari, and the Supreme Court issued an order vacating our decision and remanding *Ray* to this court for reconsideration in light of *Burns*. *State v. Ray*, 2019 Ga. LEXIS 577 (Case No. S18C1201, decided Aug. 19, 2019).

When we reconsidered *Ray* on remand, we did not again hold that the trial court must determine the admissibility of the false-allegation evidence using the "reasonable probability of falsity" procedure. We determined that *Burns* had abrogated *Smith*'s per se rule of admissibility for evidence of prior false allegations, on which we had relied in our earlier ruling. Instead we "address[ed] the issue identified by our Supreme Court: whether evidence of the deceased aunt's prior false reports, previously deemed inadmissible without a determination of a 'reasonable probability' of their falsity, should be admissible under Rule 403." *Ray v. State*, 356 Ga. App. 266, 268 (841 SE2d 477) (2020).

In addressing that issue, we stated in *Ray* that "it may well be that testimony showing that the victim's deceased aunt, who reported the crimes at issue, had previously made false claims of sexual abuse would be relevant to the veracity of the

7

allegations here." *Ray*, 356 Ga. App. at 268-269 (citation and punctuation omitted). But we held that the ultimate question of admissibility under Rule 403 was for the trial court in the first instance. Id. at 269-270. So we vacated the defendant's conviction in *Ray* and remanded the case with direction that the trial court determine

> whether, under Rule 403, the probative value of evidence as to the victim's aunt's prior false accusation is substantially outweighed by its prejudicial effect. If the trial court concludes that OCGA § 24-4-403 would have barred this jury from learning about the victim's aunt's false statement, . . . it should enter an order making findings to that effect and reinstating Ray's conviction. If, on the other hand, the trial court finds . . . that the evidence of the victim's aunt's false statement was improperly excluded, it should consider whether Ray was prejudiced by [this] error[ ] and order further proceedings accordingly.

*Ray*, 356 Ga. App. at 270 (citations omitted).

We should do the same thing in this case. The evidence that both the victim and her mother had made prior false allegations about the victim's molestation is clearly relevant to the veracity of the allegations in this case. See OCGA § 24-4-401. The trial court, however, did not apply Rule 403's balancing test, or any other rule of evidence, to determine whether that relevant evidence was admissible.

8

In his special concurrence, Judge Pipkin argues that this error was harmless, pointing in large part to the compelling nature of the victim's outcry, seen in her trial testimony and forensic interview. But the jury could conclude from the excluded evidence that the victim and her mother were not credible witnesses. If the jury did not believe the victim, then her outcry would not be compelling. And apart from her outcry, the evidence of Vallejo's guilt was not overwhelming. So the trial court's error in excluding the prior false allegations evidence without applying Rule 403's balancing test was not harmless.

Contrary to the majority, the Rule 403 procedure does not "necessarily require[] an initial determination of whether the prior allegations were, in fact false[.]" On the contrary, our Supreme Court has

> repeatedly explained [that] Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility. Thus, in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.

*Carston v. State*, 310 Ga. 797, 803 (3) (b) (854 SE2d 684) (2021) (citation omitted). Certainly, in assessing the probative value of false-allegation evidence as part of the Rule 403 balancing test, a trial court may consider the "strength of its logical

9

connection to the fact for which it is offered." *Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016). But that is not the same thing as conducting a threshold factual determination of the reasonable probability that the allegation was false. This can be seen in the majority's review of the trial court's reasonable probability determination, which rests heavily on the trial court's factual finding. *Smith*'s threshold procedure simply cannot be fit into the Rule 403 analysis now required by *Burns*, and so to apply the law established by *Burns* we must no longer employ *Smith*'s threshold reasonable probability determination.

In reaching this conclusion, I note that the majority opinion cites two cases applying *Smith*'s threshold procedure that predate *Burns* but were not expressly overruled or disapproved by that decision. See *Williams v. State*, 266 Ga. App. 578, 580-581 (1) (597 SE2d 621) (2004); *Cheek v. State*, 265 Ga. App. 15, 17 (2) (593 SE2d 55) (2003). In addition, a case decided shortly after *Burns* also has applied the threshold procedure, apparently concluding, as the majority concludes today, that the threshold procedure was part of the "evidentiary holding" in *Smith* that was upheld in *Burns*, rather than part of the "constitutional holding" in *Smith* that *Burns* overruled. See *State v. Parks*, 350 Ga. App. 799, 811-813 (2) (830 SE2d 284) (2019). But what *Burns* describes as the "evidentiary holding" — and what *Burns* upholds —

10

is simply *Smith*'s conclusion that evidence of a false allegation is not barred by the rape shield statute. See *Burns*, 306 Ga. at 120-121 (2). The *Burns* Court discusses *Smith*'s threshold procedure in connection with that decision's "constitutional holding," not its "evidentiary holding." See id. at 121 (2). That threshold procedure was integral to the constitutional holding: it was a judicially created compromise between evidentiary constraints designed to protect the victim and the defendant's constitutional "right of confrontation and right to present a full defense." *Smith*, 259 Ga. at 137 (1). Accord *Burns*, 306 Ga. at 119 (1). So the conclusion in *Parks* that the threshold procedure survived *Burns* is incorrect. That case, along with *Williams*, supra, and *Cheek*, supra, are inconsistent with our Supreme Court's opinion in *Burns*, and they should be overruled.

2. *Admissibility to show the victim's knowledge.*

The trial court ruled separately on Vallejo's argument that the evidence of the victim's prior allegation should be admitted to show her knowledge of molestation claims and the process of prosecuting such claims. At the time of that ruling, Vallejo had asserted that the victim's prior allegation probably was true. (His attorneys later obtained evidence to the contrary.) The trial court held that Georgia's rape shield

11

statute, OCGA § 24-4-412, did not bar the evidence but nevertheless ruled the evidence inadmissible for the purposes proposed by Vallejo.

The trial court should also reconsider this ruling on remand.

The trial court correctly held that, even if the prior allegation was true, the rape shield statute does not apply. By its terms, that statute only concerns evidence of the victim's "past sexual behavior." OCGA § 24-4-412 (a). Evidence that an adult perpetrated acts of sexual abuse upon a five-year-old child is not evidence that the *child* engaged in "sexual behavior." See *Lemacks v. State*, 207 Ga. App. 160, 161 (427 SE2d 536) (1993) ("Contrary to the [s]tate's argument, 'behavior' is not synonymous with 'experience.'"); *Raines v. State*, 191 Ga. App. 743, 745 (2) (382 SE2d 738) (1989) ("Obviously, a prior rape committed against the victim has nothing whatsoever to do with *her* past sexual behavior.") (emphasis in original). See also *Berry v. Smith*, 210 Ga. App. 789 (1) (437 SE2d 630) (1993) (clarifying that the rule expressed in *Raines*, supra, pertains to forcible rape), overruled in part on other ground by *Burns*, 306 Ga. at 124 (2).[4] But see *Stevens v. State*, 356 Ga. App. 847,

---

[4] We may consider these cases even though they were decided under a prior version of the rape shield statute, because the provision applying the statute to evidence of "past sexual behavior" was not changed in the enactment of our new Evidence Code in 2013 and Georgia's rape shield statute differs in substance from its federal counterpart. See generally *State v. Almanza*, 304 Ga. 553, 557 (2) (820 SE2d

852-853 (3) (847 SE2d 649) (2020) (affirming under rape shield statute trial court's ruling that defense could not cross-examine victim about her allegations that she had been molested by other people, without analysis of whether past molestation constituted "sexual behavior" on part of victim).

But the trial court erroneously relied on case law predating the current Evidence Code, in particular our opinion in *Blackwell v. State*, 229 Ga. App. 452, 453-454 (2) (494 SE2d 269) (1997). In *Blackwell* we reiterated a "long-standing rule barring introduction of evidence of prior unrelated molestation." Id. That rule is no longer standing. Rules governing relevance under our former Evidence Code were displaced by our new Evidence Code. See *State v. Almanza*, 304 Ga. 553, 556-557 (2) (820 SE2d 1) (2018), overruled in part on other grounds by *Smith v. State*, 309 Ga. 240, 247-248 (2) (b) (845 SE2d 598) (2020).

Because the rape shield statute does not preclude the evidence and the rules governing relevance under our former Evidence Code have been supplanted, the

---

1) (2018) ("If there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the [2013] Code, our case law interpreting that former provision applies."), overruled in part on other grounds by *Smith v. State*, 309 Ga. 240, 247-248 (2) (b) (845 SE2d 598) (2020).

general rules set forth in OCGA § 24-4-401 through 24-4-403 govern its admissibility.

Under OCGA § 24-4-401, "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This broad definition of relevance encompasses the inferences that Vallejo argues should be drawn from the evidence of the victim's past molestation allegation.

The case cited by the majority for the proposition that the victim's prior experience with a molestation investigation was not relevant, *Jones v. State*, 305 Ga. 750 (827 SE2d 879) (2019), is inapposite; in that case, the Court held that a photograph of two persons standing on a beach, which "established, at most, that [the two] were acquainted, a fact that was not in dispute[, . . .] did not help determine whether [one of the persons in the photograph] or [the defendant] committed the murders with [the other person in the photograph]." Id. at 753 (2) (c). And, as noted above, cases restricting the relevance of this type of evidence that were decided under our former Evidence Code, such as *Blackwell v. State*, supra, and *Chastain v. State*, 180 Ga. App. 312 (2) (349 SE2d 6) (1986), are no longer good law.

14

Under OCGA § 24-4-402, absent a constitutional or statutory exception, "[a]ll relevant evidence shall be admissible[.]"

And under OCGA § 42-4-403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

I recognize that the trial court did perform a Rule 403 analysis of Vallejo's argument that evidence of the victim's prior allegation should be admitted to show her knowledge of molestation claims and the process of prosecuting such claims. But he did so in conjunction with his application of the formerly long-standing rule set out in *Blackwell.*

As noted above, there is no room in Rule 403 for exclusion of relevant evidence on the basis that the trial court finds the evidence, or the inferences a party would draw from it, to be unpersuasive. See *Carston v. State*, 310 Ga. at 803 (3) (b). So I question whether it was within the trial court's discretion to rule the prior allegation evidence inadmissible in this case.

Nevertheless, as discussed above, to the extent the evidence is of a *false* allegation the trial court has not yet engaged in the necessary analysis of that

15

evidence's admissibility under Rule 403. See *Ray*, 356 Ga. App. at 269 (2) (application of Rule 403 to determine admissibility of relevant evidence is a matter for the trial court in the first instance). And his determination about whether evidence of this incident is admissible to show a false allegation may have an impact upon the related question of whether evidence of that incident is admissible to support inferences drawn from the victim's knowledge about molestation proceedings.

So on remand, the trial court should be instructed to reconsider the admissibility of evidence of that incident for the purpose of showing such knowledge.